32. Petition for Writ of Error With Whole Record-Test and application for immediate hearing filed Sept. 25, 2002. Assigned to judge William Cunningham who was the Erie County District Attorney that prosecuted this case.

33. In October 22, 2003, Application for Leave to File Original Process, Seeking order to Compel Erie County Court of Common Pleas to take official action and rule on Petitioner's Writ of Error filed Sept 25, 2002, and Petition For Writ of Mandamus was filed in Pennsylvania Supreme Court.

34. Motion to Amend and Amended Petition for Writ of Error With Whole Record-Test was filed on Nov 13, 2003 by appellant.

35. In November 25, 2003, Opinion and Notice of Intent to Dismiss Without a Hearing pursuant to Pa.R.Cr.P. 907 (1) was issued by judge Shad Connelly.

36. Appellant drafted his Response to Opinion and Notice of Intent to Dismiss Without a Hearing but was denied postal service from Dec 5, 2003, to Dec. 9, 2003.

37. Appellant's request to Allegheny County Jail to post his drafted Response to Opinion and Notice and send overnight delivery to appellant's brother-in-law was refused and sent instead by 1st class mail which caused delivery one day after courts deadline to file on Dec 16, 2003, and defaulted his cause of action before the court.

38. Appellant recieved the courts order Dec. 19, 2003, but was not able to ascertain his Response was delayed and unfiled because it was recieved after court due date, until Dec 30, 2003, at which point he requested his brother-in-law to file the Response as soon as possible.

39. Appellant's Response was filed Jan 2, 2004 the first day to post after discovery of default.

40. Appellant filed Notice of Appeal, was filed January 8, 2004

41. Jan. 8, 2004, appellant filed Appeal from Dismissal of Writ of Error.., Motion to Hear Response Nunc Pro Tunc Motion to order Writ of Error Continuation of First P.C.R.A. and Motion court appointed counsel to perfect P.C.R.A. .

42.  On January 15, 2004, appellant filed Motion to Hear Defendant's Response to Notice and Opinion to Dismiss Without a Hearing Nunc Pro Tunc in Superior Court with affidavits and proof of Allegheny County Jail's obstruction in access to file timely Response to Opinion and Notice of Intent to Dismiss and cause for case default.

43.  Appellant's case # 215 WDA 2004, in Superior Court was defaulted on June 29, 2004, when the court ordered appellant's Brief, filed June 17, 2004, pursuant to a court order issued April 27, 2004 granting him an Extension of Time to file on or before June 17, 2004, to be denied from the record. Default was then furthered by F.C.I. McKean who recieved this court order logged July 12, 2004, in incoming mail, and did not deliver this legal mail court order for 7 months, until Jan. 23, 2004.

44.  Appellant filed timely Notice of Appeal from Superior Court's order affirming lower court's order without knowledge of how or why his case in Superior Court was defaulted.

45. On February 21, 2005, Appellant filed a Supplement to his Petition for Allowance of Appeal in Pennsylvania Supreme Court but was denied his supplemental filing (setting forth F.C.I. McKean's legal mail delivery default in Superior Court), case # 505 WAL 2004 Supreme Court Petition was denied on March 28, 2005

## Facts of the Case

On the morning of Feb 24, 1989, petitioner left his home to exercise and rehabilitate his right knee, from a work injury, in walking on flat surfaces in short distances, with high repititions. He had chosen to engage in fishing and target shooting on Old Lake Road, along lake Erie in Springfield Township Erie County Pennsylvania, aproximately 25 miles from his home. He packed hunting and fishing gear, camping equipment, extra clothes and food for his trip.

In route, he stopped at Elk Creek Sports Store to get bait for fishing. While at the store a rifle was returned, repaired from the factory. His scope was re-mounted and petitioner bought Redfield Sight-in targets to finish sighting in his scoped rifle while out target shooting. Petitioner had also brought along a newly purchased Ruger P-85, 9 MM pistol that was jamming to have it replaced, repaired, or fixed. The store owner advised petitioner that it was not the firearm

that was malfunctioning, it was the hollow-point rounds he was shooting that was causing the problem. Petitioner bought new ammunition, parabellum rounds to test the difference.

Petitioner was engaged in target shooting about .7 mile from the Ohio state line on old Lake Road where he was shooting, walking and reloading his spent cartridges with Lee Handloaders. Completing his activity he returned to his vehicle reloaded his spent casings and loaded the rounds to see if they would chamber in the guns.

Petitioner then left his vehicle to answer a call to nature, but once in the woods before he could answer the call, he heard a vehicle approaching and returned to his car.

A state police car approached and stopped and officer Myers approached. He inquired into petitioner's activity and was told that petitioner was target shooting and just getting ready to pick-up a friend to hunt woodchucks. Officer Myers saw guns in petitioner's vehicle and asked for identification and if he had

licenses for those guns), Petitioner said he had licenses and produced upon demand hunting, fishing and archery licenses and Sportsman's Carry Permits.

Officer Myers saw guns on the front passenger seat and asked petitioner if they were loaded and again what was he doing. Petitioner said he was target shooting and yes the guns were loaded as he had just returned to his vehicle and stepped into the woods to relieve himself when he heard the car coming and returned to his vehicle. Petitioner showed officer Myers Redfield Sight in targets and an orange knit hat when again questioned about his activities. Petitioner explained he was sighting in his rifle scope for woodchuck hunting later and field testing a new handgun. Officer Myers claimed he could not hunt woodchuck because he did not have an orange hat for hunting. Petitioner then produced the orange knit hunting hat.

Officer Myers searched the petitioner, and then seized the guns, unloaded them and placed them on his vehicle, he then placed petitioner in the back of his patrol car and searched his vehicle. Trooper Myers then told petitioner to follow him to the police station to straighten things out.

-40-

Petitioner followed officer Myers to the State Police Barracks in Girard Pennsylvania where he was immediately removed from his vehicle by state police officer Marino and handcuffed. Petitioner was taken into the station and handcuffed to a bench where he was questioned for some time and given coffee. Petitioner objected to their arresting him and treating him as such and said he could prove what they were doing was unconstitutional if he could get the law books in his car Corpus Juris Secundum Vol 15 or 16 on Civil Rights. The police refused to get the books or listen and continued to question him and deny his requests to use the restroom until he finished answering their questions.

Petitioner was finally allowed to use the restroom and make a phone call after he signed his Miranda paper which was around six o'clock. Petitioner called his brother Dale Leuschen and asked him to pick up his car. The state police said he couldn't get the car until later and he would have to call later the next day to see if they would release the car.

Petitioner was then transported to District justice Robert Saxton's office and arraigned for violation of 18 P.C.S., Section 6106 "Firearms not to carried without a license", and taken to Erie County Jail.

Petitioner has had a tortured history in due process violations in post-trial process to date.

He was denied Direct Appeal without waiver when his counsel of record abandoned him.

His pro-se P.C.H.A. (Post Conviction Hearing Act) petitions were impaired by court appointed counsel who filed a false "no merit letter". The court allowed counsel to withdraw before the appeal was adjudicated and deprived petitioner of Equal Protection and Enforcement of the law under Pa. R. Cr. P. *1504*, which provides for assistance of counsel through appeal from an adverse ruling on 1ˢᵗ P.C.R.A..

Petitioner's objection to the courts ruling and counsel's false "no merit letter", and the court's error in concluding there were no meritorious issues for appeal failed to obtain an evidentiary hearing. There was no full, fair, or meaningful review on petitioner's 1ˢᵗ P.C.R.A. and all subsequent P.C.R.A.s and his Petition For Writ of Error, characterized as his 3ᴿᴰ P.C.R.A. were denied in summary dismissals that received a lower standard

-42-

of review that Direct Appeal and 1ST P.C.R.A.

On July 16, 2002, the petitioner was charged under federal jurisdiction as a "convicted felon with firearms", his felon status was solely predicated on this state conviction.

Before the legal fact of double jeopardy was established at trial in federal court on conviction and sentence petitioner filed a "Petition For Writ of Error With Whole Record-Test" in Erie County Common Pleas Court on Sept 25, 2002, on case #696 of 1989.

Petitioner asserted a timely appeal exception pursuant to 42 P.C.S., Section 9545, in discovery of new facts, double jeopardy on his state conviction and sentence. Petitioner was not disabled by statute or sentencing in his right to bear arms he was disabled by federal courts re-enterpretation of a state action that violated state statute and sovereignty, (Exhibit #21).

Petitioner's appeal was impeded and obstructed by the courts abuse in discretion and other governmental impediments in petitioner's right of access to the courts. His Petition For Writ

-43-

of Error.., was dismissed and all appeals were exhausted in state courts on Mar. 28, 2005, by the Pennsylvania State Supreme Court case # 505 WAL 2004.

Petitioner fairly presented all issues to the state courts and provided them the first opportunity to correct violations of the United States Constitution and federal statutes. Any further appeal in state court would be futile. If for some reason the state would argue an issue was not presented to the state court first petitioner would argue the state never gave any of the many meritorious issues fair consideration and as such exhausting such issue in state court would be an exercise in futility. Any argument in petitioner's issues raised as ambiguous could have been presented more concisely had the courts provided effective assistance of counsel; and pro-se petitions should be held to a lower standard than the formal standard for counsel.

Petitioner has suffered an extremely egregious and repugnant conviction, sentence, and continued civil rights disabilities from a miscarriage of justice. His federal conviction is the direct result of this miscarriage of justice and for which he is presently incarcerated.

-44-

Statement of Related Cases

The petitioner was arrested on July 16, 2002, pursuant to a search and seizure of guns in his residence, on violation of 18 U.S.C., Section 922 (g).(1) predicated solely on this state conviction. Petitioner is currently incarcerated on the federal charge and conviction case #02-163 Federal District Court W.D.Pa., (Exhibit #13, A-B,)

Summary of Meritorious Claims

Petitioner has suffered a miscarreage of justice in a state conviction that cannot be supported or sustained on the facts and "applicable" law of the charge and case, #696, of 1989, Erie County Criminal Court, for violation of 18 Pa.C.S., Section 6106, on Feb 24, 1989, "Firearms not to be carried without a license".

I.  The Pennsylvania State Police a political subdivision of the Commonwealth of Pennsylvania "questioned" abridged, and denied petitioner the exercise and enjoyment of a civil right contrary to the Pennsylvania State Constitutional mandates under Article I, Section 21, 25 and 26, without authority of law or jurisdiction and violated petitioner's 14TH Amendment rights under the United States Constitution. in equal protection and enforcement of law and civil rights.

-46-

II.    Petitioner was charged and prosecuted without the effective assistance of counsel in violation of his 6TH and 14TH Amendment rights which amounted to "constructive absence of counsel" in pre-trial, trial, and post-trial procedures and as a result suffered fundamental violations of "bedrock" principles in Due Process.

III    Petitioner was actually innocent of the charge "Firearms not to be carried without a license". Court records, evidence, and trial transcripts all clearly show petitioner had hunting and fishing licenses and Sportsman's Carry permits. The conviction was obtained in violation of his 6TH and 14TH Amendment rights for failing "to prove beyond a reasonable doubt" petitioner "lacked license".

Statutory text does not require guns to be unloaded in vehicle under exceptions, or require license or permits to target shoot, and such imposed conditions, not in statute text, violates Article I, Section 9 of the state Constitution and the 14TH Amendment of the United States Constitution without "fair warning".

- 47 -

IV    The petitioner was prejudiced in the criminal process with prosecutorial misconduct. The prosecutor knew, had to have known, he was violating his Constitutional duty and Oath of Office and acted in a conspiracy to deprive petitioner of civil rights. He withheld exculpatory evidence and facts which tended to prove petitioner's innocence and used irrelevant and immaterial facts to convict in a miscarriage of justice. He misled the jury in charging statutes (Constitutional construction, interpretation and application and in statutory application, construction, and interpretation in para materia. The prosecutor prejudiced the petitioner before the jury with unfounded inflamatory and inciting characterization of the petitioner, and used evidence ruled by the judge in chambers, before trial, as inadmissable. He withheld knowledge from the court and jury that the charging statute was void and amended and that the amended statute in effect at the time of trial provided further exceptions to the charged offense. Knowledge of the amended law is premised on his use of conditions of violation not in charging statute, of loaded guns in vehicle.

V    Petitioner' charge and conviction violated his rights as a licensed Handicapped Hunter under Title 34 Pa., C.S., Section 2923, having been adjudicated by the state as totally disabled. Petitioner had just recieved a rifle returned from the factory for repairs and was target shooting in preparation for a safe hunt. Under the Game Code 34 Pa., C.S., Section 2923 et. seg., petitioner was allowed to use his vehicle as a shooting platform. Although he was not hunting at that time, he was engaged in a hunting activity of field testing his firearms before use in hunting and therefore, enroute to go hunting, via target shooting. This was a legal right under the licensed handicapped hunters law.

VI.    The prosecution misled the jury to believe loaded firearms in vehicle was a violation of law, and that a license or permit was required to target shoot with firearms. There is no violation of statutory text for having loaded guns in vehicle while target shooting, and the statute does not require a license or permit to target shoot with firearms. Title 1 Pa., C.S., Section 1928(b)

- 49 -

requires penal statutes to be strictly construed. Imposing hidden, uncodified, and arbitrary conditions violates Article I, Section 9 of the Pennsylvania Constitution and the 14th Amendment of the United States Constitution. Such arbitrary prosecution of uncodified conditions gives rise to a claim of selective and vindictive prosecution.

The amended statute which was in effect on July 13, 14, 1989, was not used at trial, and the old charging statute used at trial was void without a savings clause or force of law to prosecute or convict. The new amended law availed petitioner of exceptions to the charged offense.

VII    The statute 18 Pa. C.S., Section 6106 is repugnant to the state Constitution and is in direct conflict with Article I, Section 21. The language and intent is clear that the right to keep and bear arms is an inherent and indefeasible right. It is a right the people, from whom this power is derived, placed beyond the power of the state and so stated in Article I, Section 25 and 26, that those rights in Article I, should forever remain inviolate.

The state by and through those in public office of bad behavior and corruption violated the 9TH, 10TH, and 14TH Amendments, and Article $IV$, Section 4, unlawfully denying and disparaging powers reserved to and inherent in the individual citizen defying our Constitutionally guaranteed republican form of government.

VIII     The Pennsylvania State Police, a political subdivision of the Commonwealth searched, and seized petitioner's vehicle and firearms, and arrested Petitioner on Old Lake Road, Springfield Township, Erie County, Pennsylvania on February 24, 1989, without probable cause or warrants, and violated the 4TH, 6TH, and 14TH Amendments.

The alleged cause of action was for loaded firearms in petitioner's vehicle while target shooting without license or permits, and was not a "member of any organization." to target shoot.

Loaded firearms in petitioner's vehicle while engaged in target shooting was not a violation of statute text. License or permits were not required by statute to target shoot and requiring petitioner to be a "member of any organization..," to target shoot

was unconstitutional class restriction of a civil right and violated the 14th Amendment in "fair warning" and unequal protection and enforcement of the law and civil rights.

IX.    The state criminal process subjected the petitioner to a process lacking in fundamental "bedrock" principles in due process. Not only was petitioner's defense counsel "constructively absent", the prosecutor and judge were "constructively absent" in their professional capacities and performance. The case was prosecuted where there was no authority or jurisdiction to question petitioner's exercise and enjoyment of a civil right and there was no subject matter jurisdiction. The prosecutor and defense counsel violated their professional code of conduct, the judge violated Article V, Section 10 (c), and 17, committing egregious acts of negligence, fraud, and omissions of duty. Because of their constructive absence petitioner was improperly charged and prosecuted on irrelevant and inadmissible facts and fictitious law, and convicted without proof beyond a reasonable doubt that petitioner "lacked a license", that a license was required, or that there was a violation of codified law, or which law was in effect.

VI                    Merits of Petitioner's Claim

A.    No Jurisdiction-To Charge or Prosecute by Commonwealth

        Petitioner was target shooting on Feb 24, 1989,
in preparation to go hunting. State Police officer Richard
Myers stopped and questioned petitioner about what
he was doing. He told officer Myers he was target
shooting and showed him targets, and presented
hunting and fishing licenses and Sportsman's
Carry Permits when demanded by officer Myers.
        Officer Myers searched petitioner and placed
him in the patrol car, then he searched his vehicle
and seized petitioner's guns, and told him to follow
him to the police station.

        The Commonwealth of Pennsylvania and its
political subdivisions are prohibited from
questioning petitioner's civil rights to Bear Arms.
Petitioner was engaged in a lawful exercise and
enjoyment of the civil right to Bear Arms in the
activity of target shooting under Article I, Section 21,
of the Pennsylvania Constitution, and the Commonwealth

- 53 -

was prohibited from abridging that right under Article I, Section 21, 25, and 26; Article V, Section (10)(c), and 17; Article VI, Section 3, of the Pennsylvania Constitution, (Exhibit #8), and the 9TH, 10TH, and 14TH Amendments, and Article IV, Section 4, of the United States Constitution.

The Pennsylvania State Police exceeded their authority and jurisdiction as did the prosecutor, district justice, judges and all other public officials. Their actions violated state Constitutional mandates that such civil rights were inherent and indefeasible rights and to remain forever inviolate, and free from the transgressions of the high powers of government.

Officer Richard Myers, upon questioning petitioner, discovered he was target shooting and targets were shown to him (Exhibit #15), along with hunting and fishing licenses, and Sporteman's Carry Permits.

The state police did not have probable cause to search petitioner's car and seize his guns or arrest petitioner. Guns in plain view on the passenger seat of his vehicle, loaded, was not a violation of the statute, where he was target shooting.

There was no probable cause or warrants for search, seizure, or arrest. Title 18 P.C.S., Section 6106, on Feb 24, 1989, the day of the alleged offense, did not make loaded guns in petitioner's vehicle a violation while target shooting. Petitioner had and produced licenses and Sportsman's Carry Permits. The charge "Firearms not to be carried without a license" had no merit.

Petitioner was arrested without probable cause or warrant, incarcerated, denied reasonable bond, and forced to appear before a court without subject matter jurisdiction.

Petitioner should have been acquitted at the Preliminary Hearing for violation of his 4TH Amendment rights against unreasonable search, seizure, and arrest without probable cause or warrants. Under the exclusionary rule, effective counsel would have known and filed Motions to: Suppress fruit of the poisonous tree, and Dismiss for lack of jurisdiction, lack of evidence, and improper charge.

Petitioner's 5TH Amendment right was violated taking his liberty without valid charge and his 14TH Amendment rights were violated in Equal protection and enforcement of the law and Due Process.

Title 18 Pa.C.S., Section 6106 on Feb 24, 1989, did not prohibit guns loaded in his vehicle. Petitioner had and produced valid licenses and Sportsman's Carry Permits. The state police had no probable cause or warrants to search, seize, and arrest, (Exhibit #1), (TT, D-1, pg 47, lines 22, state police Richard Myers):

... "and I asked him about a hunting license, which he did produce."

(TT, D-2, pg 15, lines 2-6, in judges chambers, judge John Falcone and Asst D.A. Ken Zak):

Judge:    "Do you have a problem giving him the licenses for this purpose?"

Ken Zak:    "Your Honor, if the only reason why he wants to put the defendant on the stand is to authenticate the license, I would stipulate --"

(TT, D-1, pg 48, lines 17-20, state police Richard Myers):

"After he produced the two provisional permits for the two Rugers, that's when he produced the provisional permit for the .357, .."

-56-

Ineffective Assistance of Counsel

Petitioner was appointed Erie County Public Defender Joe Burt before Preliminary Hearing. Joe Burt did not meet with petitioner before the Preliminary Hearing and arrived 45 minutes late, precluding any meaningful preparation or discussion. Petitioner did request a record to be made of the proceedings, to which Joe Burt presented, tested, and used a tape recorder.

1. Pre-trial counsel Joe Burt was ineffective for failing to meet with petitioner, plan, prepare, research, investigate, present, argue, or preserve defense issues, facts or motions before or during the Preliminary Hearing. His performance was substandard and so egregiously negligent that petitioner suffered from "constructive absence of counsel".

State Police officer Richard Myers testified that he saw firearms on the seat of petitioner's vehicle, discovered they were loaded, he seized them, placed petitioner in the back of the patrol car, searched him and his vehicle, was provided licenses and permits for the guns, then told petitioner to follow him to the police station. These facts were restated in trial testimony on July 13th, and 14th, 1989:

(TT, D-1, pg 43, lines 4-9, state police Richard Myers):

"I removed the 9 MM, I unloaded it, set it on the hood of the vehicle also. I then proceeded around to the passenger's side of the vehicle to remove the rifle, which at that time I took it out of the vehicle, checked it, found it to be loaded and I unloaded the rifle, and at that time I set it on top of the hood of the vehicle."

(TT, D-1, pg 46, lines 22-25, and pg 47, lines 1-25, and pg 48, lines 1-20, state police Richard Myers and asst. D.A. Ken Zak):

Ken Zak:        "Now, while you were there recovering these firearms from the vehicle in question, did Mr. Leuschen make any statements to you?"

Richard Myers:    "During this period of time, we -- of course, there was a discussion going on about the guns, about the legality of them guns, about any permits for them guns. Mr. -- plus attempting to obtain identification from Mr. Leuschen as to who he was, what he was doing out there at that time."

Ken Zak:    "Okay. And what did he say he was doing out there at that time?"

Richard Myers:    "Of course, during this period of time of giving these guns and getting them unloaded, he mentioned that he was target shooting. I looked around at that time, I remember there was a lane very close to that that went actually to the lake back, and looked around there to see if there was any signs of targets or anything. This is a heavily grown up area where the car was actually stopped. There was no open fields or no place where you could actually set up targets or do any target shooting."

Ken Zak:    "Did he tell you where he was target shooting?"

Richard Myers:    "No, he did not. This was just something that he mentioned during our conversation."

Ken Zak:    "Did he say anything about hunting that particular day?"

Richard Myers:    " He'd mentioned the guns were for hunting. Actually state that he, yes, was out hunting woodchuck or whatever, <u>no, he did not say that he was actually hunting</u>, but they were -- and <u>I asked him about a hunting license, which he did produce.</u>"

Ken Zak:    " And he produced it from where?"

Richard Myers:    " <u>From</u> -- we were on the passenger's side of the vehicle. At the same time <u>I was enquiring about permits</u>, which <u>he said he had permits to carry all them weapons</u>, he was actually going into the blue bag in the car, after I removed the rifle, and getting <u>his permits</u>, <u>identification, hunting license and so forth and so on</u>, and I was standing right next to him observing when he did so."

Ken Zak:    " Okay. And did he mention any particular animals that he may have been hunting or would have hunted with these weapons?"

Richard Myers:    " No, he did not."

Ken Zak: "Now, did you see any signs of weapons being discharged around there?"

Richard Myers: "No, they were all fully loaded. I saw no loose empty rounds around the vehicle."

Ken Zak: "And did you arrest him at that point?"

Richard Myers: "No, I did not at that point."

Ken Zak: "Okay. What did you do?"

Richard Myers: "After he produced the two provisional permits for the two Rugers, that's when he produced the provisional permit for the Dan Wesson .357, as if they were permits for him to carry it, probation permits. I inquired at that time, because he gave me the permit for the .357, where the .357 was at that time. He told me it was in the vehicle. I asked him if it was loaded, he said yes, and I asked him where and he told me, and with that I told him to get out, and he did bring the box out that contained the .357. During that sequence of events, I took Mr. Leuschen and placed him in the rear of the patrol vehicle. During

- 61 -

that period of time he was getting very upset at the fact that I was taking ~~taking~~ possession of the weapons."

Ken Zak:    " Okay. Because of the nature of the – –

Richard Myers:    " Because of the nature of the situation. At that time Mr. Leuschen was at times being very defensive, offensive, upset, <u>questioning my right to do this</u> and so forth and so on. I felt I was by myself, that the best thing would be to do is get him from the scene, I did not remove all the ammo from the car. At that time I basically tried to check to see if any more weapons were in the vehicle. I did manage to pat Mr. Leuschen around the waist to see if he had any weapons underneath his overalls. He became offensive with that, <u>so I told him in order to get this straightened out, he would have to follow me to the state police station</u>."

Ken Zak:    " Did he do that ?"

Richard Myers:    " He did. I pulled out and he did follow me from that point to the Girard Station. During that drive, I got on the radio, advised him of the situation, <u>that was my first chance back to the radio to actually get to use it</u>."

As is evident in trial transcripts (supra) officer Myers was in the process of seizing petitioner's guns while he was questioning and obtaining from Petitioner his identification, hunting license, and Sportsman's Carry Permits. There was no evident probable cause to search petitioner's vehicle or him, to seize his guns, or to arrest him and place him in the back of the patrol car. Even the discovery that the firearms were loaded in his search did not provide probable cause, (Exhibit #1 ). Title 18, Pa.C.S., Section 6106, on the day of the alleged violation, Feb 24, 1989, does not indicate that loaded guns in a vehicle, whether parked or in transport, is a violation. Title 1, Pa.C.S., Section 1928 (b), (Exhibit #5.c) requires penal statutes to be strictly construed. Therefore the statute having not stated in statutory text that guns must be unloaded while in a vehicle such facts can not be a condition or fact of violation for conviction.

There is and was no violation of law or probable cause for search, seizure, or arrest. Officer Myers did not have probable cause or warrants for search, seizure or arrest and everything obtained was fruit of the poisonous tree.

Officer Myers violated petitioner's 4TH Amendment and 14TH Amendment rights with an illegal search, seizure and arrest, without probable cause or warrants issued.

Pre-trial counsel Joe Burt should have filed a Motion to Suppress all evidence under the exclusionary rule and moved to Dismiss for improper charge no jurisdiction or probable cause, lack of required element of the charge "lack of license" and insufficient evidence.

At the preliminary hearing all the prosecutor needed to prove was that there was probable cause to believe petitioner had violated the law "Firearms not to be carried without a license", (Exhibit # 1 & 2). But for petitioner's incompetent, negligent, substandard, ineffective counsel, the prosecution could not prove any probable cause.

Had petitioner been provided competent counsel petitioner would have been dismissed of the charged violation for: 1.) lack of valid charge – loaded guns in vehicle was not a violation; and although licenses were produced none were required to target shoot;

-64-

2.) the State Police a political sub-division of the Commonwealth was prohibited from questioning petitioner's right to bear arms, forever, and there was no subject matter jurisdiction for lack of statute violation or authority of law;

3.) petitioner was innocent of the alleged violation charged "Firearms not to be carried without a license", licenses and permits were presented and in evidence and testimony at trial, (Exhibits # 2 ). Such facts and evidence of the law and petitioner's case, were obvious and relevant to his defense which pre-trial counsel Joe Burt did not know because he did not meet with petitioner before the preliminary hearing, he did not investigate or research the law or facts and therefore did not and could not plan, prepare, present, argue, or file motions in his defense.

Petitioner is innocent of the charge and conviction and his sentence and continued loss of civil rights violates his 4TH, 5TH, 6TH, 8TH, 9TH, 10TH, 14TH, and 15TH Amendment rights of the United States Constitution. Case #696 of 1989 Erie County Criminal Court was a miscarriage of justice and perfidy of the Commonwealth,

-65-

After trial petitioner had become aware that state police officers Richard Myers and William Marino changed their testimony of facts between Preliminary Hearing and Trial. Petitioner was unable to prove their perjury because Joe Burt either destroyed or refused to provide the tape recording of their Preliminary Hearing testimony. Petitioner filed a formal complaint with Supreme Court Judicial Conduct Board 1989-1990, and Joe Burt responded his tape recorder malfunctioned.

Joe Burt's unconscionable ineffective negligent performance deprived petitioner of viable defenses, records, evidence, and assistance during a critical stage of the criminal process.

2.  Petitioner was put on trial July 13, and 14, 1989, before judge John Falcone and prosecuted by Erie County District Attorney William Cunningham's Assistant District Attorney Ken Zak. At the beginning, before trial in chambers, judge Falcone ordered the attorney's and for the attorneys to instruct their witnesses to testify and present only the 3 handguns in the charge and their ammunition, no other guns or ammunition was to be presented to the jury.

The prosecution called witnesses for the Commonwealth, state police officers Richard Myers and William Marino, and Pennsylvania Game Commission officer Shane Hochlander to testify, and entered into evidence exhibits: #1-3, - photos of petitioners vehicle, #4, .243 Remington Rifle, #5 - .243 clips, #6 - .22 Ruger revolver, #7 - .22 ammunition, #8 - 9MM ammunition, #9 - 9MM Ruger pistol, #10 and #11 - 9MM clips, #12 - storage box for 9MM Ruger, #13 - .357 Dan Wesson revolver, #14 - .357 ammunition, #15 - box with ammunition, #16 - blue bag with ammunition, and #17 Pa. State Police Information Certificate. The defense entered into evidence by stipulation hunting and fishing licenses and Sportsman's Carry Permits, and Pennsylvania Game Code.

Through out trial the prosecutor, defense counsel, state police, and the court discussed and used Concealed Weapons License, Carry License, Sportsman's Carry Permit, Provisional Permit, Hunting License, and Fishing License interchangably and ambiguously. There are: Concealed Weapons License, Hunting License, Fishing License, Sportsman's Carry Permits, all of which under specifeed circumstances and use parameters are a License to Carry. A provisional permit petitioner believes is the same as a Sportsman's Carry Permit. Petitioner believes the jury did not know or understand the differences in use or application of one from the other from their presentation or jury instruction.

Trial counsel for the petitioner Joseph J. D'alba was "constructively absent" as petitioner's advocate and was ineffective for negligent and substandard performance which prejudiced petitioner during trial's due process.

Counsel did not present that there was no probable cause or warrants for search, seizure, and arrest, (Exhibits #1 & 2   ), (TT, D-1, pg 43, lines 4-9, state police Richard Myers):

-68-

" I removed the 9MM, I unloaded it, set it on
the hood of the vehicle also. I then proceeded
around to the passenger's side of the vehicle
to remove the rifle, which at that time I took
it out of the vehicle, checked it, found it to
be loaded and I unloaded the rifle, and
at that time I set it on top of the hood of the
vehicle."

The probable cause asserted by officer Myers
is: loaded guns in petitioner's vehicle, and
his lack of a Provisional Permit (Sportsman's
Carry Permit as defined in 6106 (c) amended
new law), (TT, D-1, pg 60, lines 9-10, state police Richard Myers):

" No, he became upset when I questioned
his legality of having them guns loaded
in the car."

State police officer William Marino asserted the
same false part of law; (TT, D-1, pg 77, lines 7-9, William Marino):

" Basically, he did not appear to understand
that he was not permitted to have possession of
the loaded firearms in his vehicle. "

- 69 -

This exceeds the written text prohibitions of the statute, (Exhibit #1  ) on Feb 24, 1989, the day of the alleged offense, and imposes hidden conditions without giving "fair warning" to what conduct is prohibited and encourages arbitrary, unreasonable, and discriminatory enforcement of the law. Such unwritten and creative imposition of ambiguous, or vague conditions violates the Due Process Clause of the Constitution of the United States 14 Th Amendment, and Pennsylvania Article I, Section 9.

A penal statute requires "fair warning" and must be strictly construed, Title 1, Pa. C.S., Section 1928 (b), (Exhibit #5B), and must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement," (Village of Hoffman Estates v Flipside 455 US 489, as cited in Commonwealth v Ludwig 55 D & C 4 Th, 2001, at 456).

" A statute can be challenged as applied if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced, Palmer v City of Euclid 402 US 544 (1971). A party may

test a law for vagueness) as applied only with respect to his or her particular conduct; if a statute is vague as applied to that conduct, it will not be enforced even though the law might validly be imposed against others) not similarly situated."

Com v Ludwig at 458:

"To find petitioner guilty of the charge for loaded firearms) in his vehicle violates the 14th Amendment as impermissably vague and without "fair warning"

State Police officers Myers and Marino were wrong as was the prosecutor for stating petitioner was guilty because he did not have a provisional permit (Sportsman's Carry Permit) while engaged in target shooting. Neither in the target shooting exception or subsection (c) does the statute require a provisional permit. The law is silent on that imposed condition, (Exhibit #1) and again violates the 14th Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, without "fair warning".

Trial counsel was further ineffective for failing to argue that a <u>necessary element of the charge was</u> "lack of license", for target shooting. Licenses and Sportsman's Carry Permits were produced and presented upon demand and entered into record at trial by testimony and as evidence. To convict petitioner for "Firearms not to be carried without a license", under 18, P.C.S., Section 6106, (Exhibits #1 & 2), on Feb. 24, 1989, was a violation of the 6TH, and 14TH amendments of the United States Constitution, <u>for failing to prove "lack of license", or that a license was necessary to target shoot, beyond a reasonable doubt.</u>

In Fiore v White 148 L Ed 2d 629, (2001), W.D. Pa. Allegheny County, the defendant was charged and convicted for "operating a hazardous waste facility without a permit", although he had a permit and records reflect one in evidence, the Commonwealth argued it wasn't proper use. The United States Supreme Court reversed the conviction and stated :

"This courts' precedents makes clear that Fiore's conviction and continued incarceration on this charge violate the due process. We have held that the Due Process Clause of the

-72-

Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements beyond a reasonable doubt."

The Simple inevitable conclusion is that Fiore's conviction fails to satisfy the Federal Constitutional demands."

at 633

(TT, D-1, pg 47, lines 22, state police Richard Myers):

".. and I asked him about a hunting license, which he did produce."

(TT, D-1, pg 48, lines 17-20, state police Richard Myers):

" After he produced the two provisional permits for the two Lugers, that's when he produced the provisional permit for the Dan Wesson .357, .."

(TT, D-2, pg 15, lines 2-6, judges chambers judge Falcone and Asst D.A. Ken Zak):

Judge:    "Do you have a problem giving him the licenses for this purpose?"

Asst D.A. Zak      " Your Honor, if the only reason why he wants
                   to put the defendant on the stand is to
                   authenticate the license, I would stipulate - - "

        In petitioner's case like Fiore's they had and
court records reflect licenses and permits in the
record and evidence, and failure to possess the necessary
license (or permit) was a basic element of the alleged
violation charged. The state failed to prove beyond
a reasonable doubt that petitioner did not have
a license.


        Petitioner further asserts the state cannot
prove that a license was necessary to engage
in the target shooting exception 18 Pa. C.S., Section
6106, (b) (4), (Exhibit #1), to even establish
a cause of action.   Only the hunting and fishing
licensed activities under the (b)(9) exception
require a firearm permit (Sportsman's Carry Permit)
as indicated in subsection (c), (Exhibit #1).
Again requiring a permit for the target shooting
exception fails to give "fair warning" and violates
Title 1 Pa.C.S., Section 1928 (b) (Exhibit #5 B), the
Pa Constitution Article I, Section 9, and the 14th
Amendment of the United States Constitution.

<u>Trial counsel failed to object to testimony and evidence</u> <u>the judge ruled</u>, in chambers on a Motion in Limine by defense counsel, <u>to be excluded from trial</u>, (TT, D-1, pg 5, lines 23-25, and pg 6, lines 1-12, Judge ~~Falcone~~):

Judge ~~Falcone~~

"I would grant the motion in part and deny the motion in part in the following respects. Pertaining to the Commonwealth's case in chief, I would decide that testimony pertaining to anything other than the three handguns would be irrelevant at that time and I'm going to instruct the attorneys and the attorneys to instruct his witnesses to avoid testifying to anything other than the handguns that were found in the vehicle and any ammunition, .."

the prosecution in violation of this ruling starts right out in his opening statement and introduces a .243 rifle, (TT, D-1, pg 20, lines 20-22, asst. D.A. Ken Zak):

"~~For~~ one thing, the rifle is loaded. He looked in the car and it's loaded. .243 caliber rifle, that's a high-powered rifle, it was loaded."

- 75 -

(TT, D-1, pg 23, lines 4-5,  asst. D.A. Ken Zak):

...," that he had no right under the law to have a loaded rifle in his car, hunting, target shooting or not, "

(TT, D-1, pg 33, lines 5-8, state police Richard Myers):

" at that time I could look into the vehicle and I saw the rifle that was actually sitting across towards the floor on the passenger's side of the seat."

(TT, D1, pg 33, lines 23-24, (court evidence):

" (Whereupon, Commonwealth's Exhibits Nos. 4 and 5 were produced and marked for identification.) "

prosecution's witness Shane Hochlander of the state Game Commission testified and answered questions by asst. D.A. Ken Zak about the .243 rifle, also violating the rule (TT, D-1, pg 85, lines 17-19, Game officer Shane Hochlander):

Ken Zak:       " On Feb. 24, did Mr. Leuschen and his rifle come to your attention? "

-76-

Hochlander:    " Yes, sir, they did. "

(TT, D-1, pg 86, line 11-25, Game Officer Shane Hochlander):

Ken Zak:    " And now, the one weapon you cited him with, is that Exhibit 4, this .243 rifle ? "

Hochlander:    " Yes, rifle is correct. "

Ken Zak:    " Okay. When you recovered the rifle, did you recover anything else with the rifle ? "

Hochlander:    " I recovered a loaded magazine with the rifle. "

Ken Zak:    " Okay. And exactly what violation of the game laws did you cite this man with ? "

Hochlander:    " The section was 2503 of Title 34, and it's loaded firearms in a vehicle, and basically states that you cannot have a loaded firearm in, on or against a vehicle, whether the vehicle is in motion or not. "

Although defense counsel raised a Motion en Limine to exclude evidence and testimony other than the three handguns and ammunition and the judge granted it, defense counsel was egregiously ineffective and allowed testimony that was extremely prejudicial as well as evidence. Such evidence and testimony tainted the jury's objectivity and was further prejudiced by the judge.

<u>Throughout trial the prosecutor's statements and witness testimony bears proof of malicious and vindictive prosecution to obtain a conviction from fabricated facts and misrepresentation of law.</u>

Officer Myers testimony in trial transcripts:

1.) ",a blue vehicle was parked actually across the westbound lane," (D-1, pg 30, lines 15-16). — <u>conflicts with</u> :

   " it was running" (D-2, pg 38, lines 2)

2.) " I remember there was a lane very close to that that went actually to the lake back, and looked around there to see if there was any sign of targets or anything." (D-1, pg 47, lines 9-11) — <u>conflicts with</u> :

" I never searched any further than right around the vehicle." (D-1, pg 63, lines 12-13).

3.)    " so I told him in order to get this straightened out, <u>he would have to follow me to the police station</u>." (D-1, pg 49, lines 13-15). — <u>conflicts with</u>:

" No, I told Mr Leuschen <u>that he could -- if he wanted to correct it, he could follow me to the station</u>." (D-1, pg 64, lines 24-25).

4.)  J. D'alba: " When you obtained the guns in question did he hand them to you?"

Myers: " No, he did not." (D-2, pg 36, lines 22-24) <u>conflicts with</u>:

" Of course, during this period of time of giving these guns and getting them unloaded, he mentioned..." (D-1, pg 47, lines 7-8).

-79-

It was the statement of fact, that petitioner did not have a provisional permit (Sportsman's Carry Permit) by the prosecutor: (TT, D-2, pg 66, lines 1-3):

" . But he has no license of any sort, whatsoever, for the 9 MM, so there is no way he's not -- he can be not guilty on the 9 MM, no way. "

and state police William Marino testifies, (TT, D-1, pg 78 lines 14-16):

" I asked trooper Myers if he, in fact, was able to obtain a firearm permit from Mr. Heuschen. He advised me he could not. " conflicts with :

(TT, D-1, pg 48, lines 17-20, state police Richard Myers):

" After he produced the two provisional permits for the two Rugers, that's when he produced the provisional permit for the Dan Wesson .357, "

There was and is no credibility to the prosecutor's assertions or witness testimony, they misled, lied, and misrepresented facts and law and used irrelevant issues to convict.

Trial counsel Joseph J. D'Alba failed to:

A. Object to prejudicial, inciting and inflamatory characterization of petitioner as Pocho Villa and a revolutionary, (TT, D-2, pg 59, lines 20-21, prosecutor Kenzak in closing):

" Speaking of revolution, sounds like something out of a Poncho Villa movie,.."

B. Object to testimony and evidence (trial exhibit #4 & 5) the .243 rifle which the judge ruled to be excluded

C. Establish improper charge "Firearms not to be carried without a license" when licenses and permits were produced and such charge and conviction violated Article I, Section 9, of the Pennsylvania Constitution and the 14th Amendment of the United States Constitution.

D. Establish loaded firearms in petitioner vehicle was not a violation of the crimes code while engaged in, going to or from target shooting and in possession of licenses and permits.

E. Establish no license or permits were required to target shoot.

F. Establish that the Commonwealth did not and could not prove necessary element of the charge "lack of license" beyond a reasonable doubt.

G. Establish that all evidence and information presented was fruit of the poisonous tree, because the search, seizure, and arrest were without probable cause or warrants and violated the 4TH Amendment, under the Exclusionary Rule.

H. The charging statute was amended and without force of law at the time of trial.

I. Establish that the new amended statute in effect at the time of trial availed petitioner of three (3) viable defense exceptions 6106, (b)(4), (9); and (c)

Had trial counsel been effective and presented these issues and arguments, the jury would have found the petitioner not guilty of the charge.

3.    Post-trial counsel began with Joseph J D'Alba who abandoned petitioner, at which point he began pro-se to appeal his conviction. Petitioner's first appeal was a petition for a Writ of Habeas Corpus after conviction but before sentencing. He then filed a Petition Under Post Conviction Hearing Act alleging ineffective assistance of counsel by Joe Burt, Petitioner was denied "because defendant is and has been represented by counsel, Attorney Joseph J. D'Alba." Petitioner then filed a Petition for Arrest in Judgment and New Trial, was denied as untimely and improperly filed (improperly captioned Petition Under Post Conviction Hearing Act Rule 1501).

On Feb 9, 1990, petitioner filed again under the Post Conviction Hearing Act. On Feb. 28, 1990, the court appointed counsel Jack E. Grayer to represent the petitioner and ordered him to supplement or amend the petition, (Exhibit #9 c).

On May 29, 1990, Jack E Grayer filed a "no merit letter" and the court by order granted his motion to withdraw as counsel. The court's independent review concurred that petitioner's petition is without legal merit. On May 30, 1990, the following day the court by order denied petitioner's pro-se Petition Under Post Conviction Hearing Act, (Exhibit 9 D).

Petitioner continued to appeal pro-se through May of 1991.

-83-