On August 31, 1993, petitioner hired counsel Chris Rand Eyster who filed an appeal "Motion for Post Conviction Collateral Relief and was denied as petitioner's second Post Conviction Relief Act Petition by order issued on Feb 10, 1994, (Exhibit #9 F).

On March 11, 1994, petitioner's counsel filed Notice of Appeal and was denied by order Mar. 14, 1994, as "untimely filed.", (Exhibit #9 F).

Appeal was docketed Mar. 22, 1994, in Superior Court of Pennsylvania, and lower courts denial was affirmed Nov. 30, 1994, (Exhibit #9 F).

Appeal was taken to the Federal District Court where petitioner's Petition For Writ of Habeas Corpus was untimely filed. Counsel contacted petitioner prior to filing his Writ of Habeas Corpus and presented an offer for a pardon from Governor of Pennsylvania Tom Ridge stating he had gone to school with his brother and knew he could get him a pardon. Petitioner refused the offer and counsel filed untimely Writ and defaulted petitioner's cause of action.

Petitioner appealed to U.S. Court of Appeals for the 3rd Circuit #96-3473 and was denied in 1997.

On Sept 25, 2002, petitioner filed a "Writ of Error With Whole Record Test" based on newly discovered

facts and double jeopardy, from a federal charge violation 18 U.S.C., Section 922(g) "convicted felon with firearms", based on this state conviction now on appeal as the predicate, (Exhibit 13 A-B).

For over a year petitioner's "Writ of Error...," was without action. On Oct 22, 2003, petitioner filed a petition for Writ of Mandamus in the Pennsylvania Supreme Court asserting judge William Cunningham was assigned the "Writ of Error...," and had also been the Erie County District Attorney who prosecuted the petitioner and prejudices his appeal with inaction. On Nov. 18, 2003, petitioner filed an Amended Petition for Writ of Error..., and the Supreme Court denied his Writ of Mandamus stating the lower court had not had time to consider his Amended Petition.

On Nov 25, 2003, Erie County Court of Common Pleas issued an "Opinion and Notice of Intent to Dismiss Without a Hearing pursuant to Pa. R. Cr. P. 907, by judge Shad Connelly, (Exhibit #14, H-I)

Petitioner drafted his "Response" to the courts' "Opinion and Notice of Intent to Dismiss...," and delivered it to the Allegheny County Jail Staff Dec 5, 2003, for mailing by Overnight Express delivery. Allegheny County Jail defaulted petitioner's timely "Response" by obstructing his right of access to the court. (Exhibit #20 ), (Exhibit 14, BB-FF).

Petitioner's "Response" was mailed four days later Dec. 9, 2003, by 1ST class mail instead of requested Overnight Express Mail. The "Response" was not recieved until after its due date Dec 16, 2003. Petitioner's Writ of Error.., was denied by court order on Dec 17, 2003, by judge Shad Connelly. A timely Notice of Appeal was filed, (Exhibit #14 G-J).

Petitioner's appeal was filed in Pennsylvania Superior Court # 215 WDA 2004, and defaulted by Federal Correctional Institution McKean's untimely delivery of a court order issued June 29, 2004, and delivered 7 months later on Jan. 23, 2005. A timely Notice of Appeal was filed, (Exhibit #18 ),

Petitioner filed a "Petition for Allowance of Appeal in the Pennsylvania Supreme Court case # 505 WAL 2004. The petition for Allowance of appeal was denied Mar. 28, 2005, (Exhibit # 17 ).

Petitioner's appeals in Superior Court # 215 WDA 2004, and Supreme Court # 505 WAL 2004 were defaulted by F.C.I. McKean's untimely delivery of a court order issued in error, (Exhibit #18 A-R ).

Post trial counsel was ineffective and provided negligent or substandard performance in petitioner's appeal process and amounted to "constructive absence of counsel", which violated his 6TH and 14TH Amendment rights.

A.  Joseph J. D'Alba filed a Petition In arrest of Judgment and for a New Trial which was denied. Counsel then abandoned petitioner and did not file Direct appeal. Petitioner was denied Direct appeal without waiver of that right.

Petitioner attempted to appeal his conviction with a Petition for Writ of Habeas Corpus between conviction and sentencing. Judge Michael Joyce denied the Petition for Writ of Habeas Corpus as improperly filed and should have been a P.C.R.A. petition which was intended by the legislature to supplant such common law remedies, Commonwealth v Runk 250 Pa. Super. 130, 378 A2d 488 (1977). The P.C.R.A. petition is not available between conviction and sentence and violates a substantive right under the Writ of Habeas Corpus's Availability. Article V, Section (10) (c) of the Pennsylvania Constitution prohibits the court Judiciary from abridging, modifying, or enlarging substantive rights of the litigant. Article I, Section 9, paragraph 2 of the United States Constitution states:

"The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

Petitioner then filed a petition Under Post Conviction Hearing Act alleging ineffective assistance of counsel Joe Burt. The court denied his petition and stated: "defendant is and has been represented by Counsel attorney Joseph J. D'Alba". Petitioner filed a "petition in Arrest of Judgment and for New Trial" and was denied.

**B**    On Feb. 9, 1990, petitioner filed a petition Under Post Conviction Hearing Act, pro-se, and on Feb. 28, 1990, the court appointed counsel Jack E. Grayer to represent the petitioner on appeal and ordered him to amend or supplement the pro-se petition.

On May 29, 1990, Jack E. Grayer filed a _false_ "no merit letter", and the court granted him leave to withdraw as counsel. The court in error concurred with counsel's "no merit letter". On the following day May 30, 1990, the court issued an order and denied petitioner's pro-se appeal. Petitioner's right to effective assistance of counsel throughout the

post-conviction collateral proceedings), including any appeal from adverse ruling was violated. Counsel was granted leave and left _before his_ _1ST P.C.R.A. was adjudicated_ (denied), and denied the equal protection of the law, as set forth in Pa. R. Cr. P. 904 (E), which provides for assistance of counsel to appeal adverse ruling. Petitioner suffered violation of his Due Process rights as provided under the 6TH and 14TH Amendment which guarantees Equal Protection and enforcement of the law in state established due process as defined in Pa. R. Cr. P. 904 (E), (previously cited in Pa. R. Cr. P. as 1504 and 907).

The fact that these issues, now from state courts, are being presented to federal court is proof that they did and still do exist and are meritorious. These issues have not be addressed and such ineffective assistance of counsel and court error have furthered the state's obstruction of due process under the 6TH and 14TH Amendments.

C.    Petitioner attempted to appeal the denial of his P.C.H.A., pro-se, but the courts abuse in discretion refused to even accomodate petitioners attempts. Upon appeal the court ordered petitioner (Exhibit #9 D ) to file a Concise Statement of Matters Complained of on June 19, 1990

On June 13, 1990, (Exhibit # 9 D) petitioner requested by Motion, "Court Records and Transcribed Notes of Testimony", and "Extension of Time to File Concise Statement of matters complained of".

Although the docket is silent (?) on the order petitioner was denied the Motions and filed a "Notice of Appeal on July 30, 1990, to Superior Court Pittsburgh #1030.

On Aug 6, 1990, (Exhibit # 9 E), the court again denied petitioner's, pro-se, motions for Enlargement of Time to File Objections to Defense Counsel's "no merit letter", motion for Enlargement of Time to File "Concise Statement of Matters Complained of", and motion for Transcribed Notes of Testimony and Court Records, stating petitioner failed to specifically set forth how any of the requested transcriptions will be relevant to his appeal.

The arbitrary and unreasonable application of rule and law denied petitioner his desperate and diligent search for justice and integrity in the court for a miscarriage of justice that by and through a preponderance of evidence, in court records, was a well delineated objective of obstruction.

Petitioner attempted to appeal pro-se, the denial of his P.C.H.A. and defense counsel's false "no merit letter", but the courts abuse in discretion obstructed and impeded his appeal efforts. Petitioner was denied

court records, transcribed notes of testimony and reasonable time to file after obtaining the necessary records to do so.

The court improperly characterized Jack Grayer's false "no merit letter" as a "Finley letter". In Com. V Finley 550 A2d 213 at 217 (Pa. Super, 1988) the court stated:

> "Every P.C.H.A. lawyer, whether privately retained or appointed by the court, has essentially the same professional responsibility. He or she must communicate with the client, examine the record, research the law, and identify arguments which can be pursued via collateral attack. In so doing, counsel must serve the best interests of the client. If after such an evaluation, counsel comes to the conclusion that a collateral attack is "wholly frivolous" he may inform the court and seek to withdraw."

Jack Grayer did not communicate at all with petitioner. In fact petitioner sent him a letter expressly stating he was not to take any action without petitioner's prior knowledge and consent. Jack Grayer did not even notify petitioner of his intent or

of his actions). It was by order of the court petitioner discovered Jack Grayer had betrayed his client and his professional responsibility.

The fact that these issues did and still do exist without being addressed is now before the Federal court without the states' obstruction, to be addressed.

Indeed petitioner would re-argue the issue raised in McCoy v Court of Appeals of Wisconsin, District 1, 108 S. Ct. at 1901

> "Appointed counsel, however, is presented with a dilemma because withdrawal is not possible without leave of court, and advising the court of counsel's opinion that the collateral attack is frivolous would appear to conflict with the advocate's duty to his client"

The court appointed counsel is peculiarly subjected to divided loyalties, in fact, and petitioner does not confuse a lawyer's ethical obligations to the judicial system with an allegiance to the adversary interests of the state (plaintiff and Primary principle) in a criminal prosecution. Jack Grayer's demeanor and actions cannot be construed in his willful

and knowing omission to communicate and act upon petitioner's written request to communicate his intent and actions, as anything other than belligerent betrayal to the petitioner. For the court to further such perfidity by allowing counsel to withdraw and concurring with such whitewash taints the integrity of the courts.

Such knowing omissions in statutes application, interpretation, strict and Constitutional Construction, and of well published amended law known to the court before the charge was brought and before trial is the biggest snow storm in Erie County's history.

Where the United States Supreme Court has delineated conflicting loyalties between adversarial states interests, and professional responsibility they elevate members of the bar above the flaws of human nature and bestow title of distinction and nobility without hesitation. Such preconceived notions is an invitation to shortcomings of human nature, and makes them that much more profound and insurmountable. As ones schooled in the arts and science of law their performance should ensure and demand more terpitude and responsibility to the law than that demanded of the layperson who is denied their ignorance of the law and to unwritten and

-93-

hidden caveats of statutes and civil rights.

Petitioner was unable to refute or substantiate his claim that Jack Frazer's "no merit letter" was false. He was refused by the court motions to obtain transcribed notes of testimony and records to formulate his "Concise Statement of Matters Complained of" and "Objections to Defense Counsel's "no merit letter" and for Enlargement of Time to file these issues, and appealed to Pennsylvania Superior Court with motions to Compel. The lower court was directed on Sept 4, 1990, to act on the Motion for Transcribed Notes of testimony and Court Records (Exhibit #9 E) although the lower court did not transmit that motion to Superior Court with the record. On Sept 24, 1990, (Exhibit 9 E) the lower court reluctantly provided some, but, not all records requested. The Superior Court again directed the lower court (Exhibit #9 E) Oct. 12, 1990, to provide copies of the record to the petitioner for purposes of prosecuting his pro-se appeal.

On May 7, 1991, the Superior Court affirmed the lower courts ruling.

The Commonwealth and its political subdivisions successfully obstructed and denied petitioner in Direct Appeal, and in his Post Conviction Relief Act petition was never given full, fair, and meaningful review, by

- 94 -

ineffective assistance of counsel and court error in concluding there were no meritorious issues for appeal. Petitioner's attempts to overcome the ineffective representation was met with abuse of courts discretionary powers that obstructed and frustrated petitioner with relief avoidance doctrine and abuse in discretion. Such action by the state in due process raises a question unanswered by the Supreme Court since 1965 in Case v Nebraska 381 US 336 (1965), : to what extent does the Federal Constitution require full, and fair state post-conviction procedures?

D.    On August 31, 1993, petitioner retained counsel Chris Rand Eyster who filed for Post Conviction Collateral Relief, (Exhibit 9 E). The lower court denied the P.C.R.A. on Feb. 10, 1994, as petitioner's 2nd P.C.R.A. petition. Counsel filed a Notice of Appeal on Mar. 11, 1994, which was denied Mar. 14, 1994, as untimely filed.
    Petitioner's appeal was docketed Mar 22, 1994, in Superior Court of Pennsylvania, and the lower courts denial was affirmed Nov. 30, 1994.
    Petitioner immediately and paid Chris Rand Eyster to file a Petition for Writ of Habeas Corpus Section 2254 in Federal District Court. When petitioner refused

an offer presented by counsel to accept a pardon from the Governor of Pennsylvania, counsel defaulted petitioner's Writ by filing out of time.

Petitioner discussed with counsel (Chris Eyster the fact that his appeals in state courts were futile and would not likely be productive, but was necessary to exhaust state remedies to permit his appeal by Writ of Habeas Corpus in federal district court. After paying counsel for each appeal to get to federal court, counsel committed an act of fraud. Petitioner paid counsel in early Dec. 1994 to file in Federal District Court, and counsel had ample time and opportunity to do so, there is no logical or reasonable cause for counsel's untimely filing other than deliberate default. Counsel defrauded petitioner's expectation of performance for which he recieved payment and violated his Professional Code of Conduct as an officer of the federal court.

E.  Petitioner appealed for reconsideration pro-se, and in U.S. Court of Appeals for the 3rd Cir, case #96-3473 until 1997, at which time he was indigent and homeless, unable to continue his appeals.

F.    On Sept 25, 2002, petitioner filed a Petition For Writ of Error With Whole Record Test in Erie County Court of Common Pleas on this case #696 of 1989, based on newly discovered facts and double jeopardy. Petitioner was charged with violation of 18 U.S.C., Section 922 (g) " convicted felon with firearms". Under 18 U.S.C., Section 921 (a) (20) the federal statute has authorized the state in predicate misdemeanor convictions to determine petitioner's right to possess. The state did not by positive law or at sentencing deprive petitioner of his right to possess firearms, it is by the federal courts in re-interpretation of the states actions that petitioner is alleged to have been disabled.

Petitioner filed in Erie County Court of Common Pleas less than 60 days after discovery of new facts and before he was tried and convicted. He qualified under exceptions in timely filing under 42 Pa. C.S. Section 9545 due to governmental interference in continuing due process violations and discovery of new facts and double jeopardy, (Exhibit #21 ).

The petition for Writ of Error.., was without court action and upon discovery that his appeal was assigned to judge William Cunningham, he filed a

Petition For Writ of Mandamus in the Pennsylvania Supreme Court asserting judge William Cunningham was the Erie County District Attorney in 1989 who prosecuted this case and had prejudiced his cause of action with a conflict of interest and inaction, on Oct 22, 2003, (Exhibit # 19).

On Nov. 18, 2003, the petitioner filed an amended petition for Writ of Error..., and the Pennsylvania Supreme Court dismissed his Writ of Mandamus stating the lower court had not been given the opportunity to consider his amended petition.

On Nov. 25, 2003, Erie County Court issued an "Opinion and Notice of Intent to Dismiss Without a Hearing" pursuant to Pa.R.Cr.P. 907. Petitioner received the "Opinion and Notice...", on Nov 28, 2003 and had a drafted "Response" to the courts "Opinion and Notice" and delivered it to Allegheny County Jails staff for posting on Dec. 5, 2003, and requested Overnight Express Delivery, (Exhibit #14, BB-FF).

Allegheny County Jail defaulted petitioner's timely "Response" by obstructing his access to the court. His "Response" was not posted until four days later Dec. 9, 2003, and sent by 1st class mail instead of, as requested, Overnight Express Mail. The

"Response" was not recieved until after the courts due date, and untimely filed for causes beyond his control, (Exhibit 20 A-K) by governmental interference. The lower court dismissed petitioner's "Writ of Error..", on Dec. 17, 2003, by judge Shad Connelly. A timely Notice of Appeal was filed. No Concise Statement of Matters Complained of was ordered or filed.

  Petitioner's appeal was filed in Superior Court #215 WDA 2004, and defaulted by Federal Correctional Institution McKean's with holding of a court order issued June 29, 2004, for 7 months and delivery was not made until Jan. 23, 2005, (Exhibit #18).

  On April 27, 2004, petitioner was granted an Extension of Time to File his Appeal Brief and given until June 17, 2004, to file. On June 17, 2004, petitioner filed a timely brief. On June 29, 2004, Superior Court issued an order denying the brief petitioner filed on June 17, 2004. This court order, in error, denied petitioner's brief but was not delivered until 7 months later on Jan. 23, 2005. Petitioner could have corrected the error if he had recieved timely delivery of the court order by refuting it with the previous court order issued April 27, 2004. Petitioner's (Exhibit #18), appeal in Superior Court was decided in the absence of his brief filed June 17, 2004. Timely Notice of Appeal was filed.

Petitioner filed "Petition For Allowance of Appeal in Pennsylvania Supreme court # 505 WAL 2005 but this was denied on Mar 28, 2005. Petitioner's appeal was made to Supreme Court without knowledge or receipt of the Superior Courts order in error. Petitioner tried to remedy this late delivery of the Superior Court order by filing a supplement, it was denied.

Again petitioner's state appeal process was obstructed and defaulted by governmental interference and violations of his right of access to the court under the 6th and 14th Amendments due process and effective assistance of counsel, and equal protection and enforcement of the law.


G.      Petitioner's right to effective assistance of counsel under the 6th and 14th Amendments of the United States Constitution was violated. As in Strickland v Washington 466 US 668 (1984), petitioner suffered substandard and unreasonable performance of one schooled in the arts and science of law.

Counsel's performance in pre-trial, trial and post-trial proceedings during critical stages was so egregious and negligent as to amount to "constructive

absence of counsel" as found in Gideon v Wainwright 372 US 335, at 345 (1963):

> "Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissable. He lacks both the skill and knowledge to adequately prepare his defense even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

In pre-trial defense counsel Joe Burt was ineffective and allowed the petitioner to be put on trial without a proper charge. There was no violation of law. License and Permits were presented but not required to target Shoot, (Exhibit #1). A necessary element "lack of license" as alleged by the Commonwealth, could not be proven beyond a reasonable doubt. The evidence used

to convict "loaded guns in vehicle" and "lack of license for target shooting" are without "fair warning and ambiguous". Petitioner and his vehicle was searched, property was seized, and petitioner was arrested and incarcerated without warrants or probable cause. All evidence should have been suppressed under the Exclusionary rule as "fruit of the poisonous tree, and the charge dismissed for the causes herein.

Petitioner's United States Constitutional rights were violated under the 4th, 5th, 6th, and 14th Amendments.

Had pre-trial counsel been competent and effective these relevant facts and issues of law been presented at Preliminary Hearing or in pre-trial motions petitioner would have been released of the charge and dismissed.

Trial counsel Joseph J. D'Alba was ineffective and allowed petitioner to be tried on an improper charge, based on incompetent evidence of fact and law, irrelevant evidence, and inadmissable

evidence. Counsel did not object to the character assasination by the prosecutor calling him "Poncho Villa" or to the admission of evidence the judge ruled in chambers, before trial, as inadmisseable and was prejudicial implying guilt. Counsel allowed petitioner to be tried without a cause of action or stated violation of valed law, on a statute as interpreted and applied that was repugnant to Statutory Law and the Constitution. Nor did counsel know or present to the court that the charging statute had been repealed and that a new amended law was in effect at trial, (Exhibit # 4). Counsel failed to present, argue, and establesh proper statute interpretation in para materia, and strict penal and Constitutional Construction, (Exhibit # 5 B-C), 1, Pa., C.S., Section 1921 et, seq..

Had trial counsel presented these facts and evidence of law and relevance, petitioner would have been found not guilty. No charge and the necessary elements could be established and proven beyond a reasonable doubt.

Petitioner's rights in 4TH, 5TH, 6TH, and 14TH Amendments were violated during trial because of ineffective assistance of counsel.

Post trial counsel Joseph J. D.'Alba was ineffective and abandoned petitioner depriving him of his Direct Appeal right.

Court appointed post-trial counsel Jack Grayer was ineffective for filing a _false_ "no merit letter". He did not communicate with petitioner at all or recieve his consent, as expressly stated in a letter to counsel, before he took any action. Counsel did not even serve a copy of his "no merit letter" on petitioner. He has as of yet, not seen this "no merit letter". This _false_ "no merit letter" is refuted by the simple fact that the issues now before this court existed then as now without being addressed in any collateral appeal. Jack Grayer prejudiced and compromised petitioner's best opportunity to be heard on appeal after being deprived of his Direct Appeal.

Attorney Chris Rand Eyster was ineffective for failing to argue in state court that his P.C.R.A. characterized by the court as his 2ND P.C.R.A., should have been considered a continuation of his 1ST P.C.R.A. having been denied without an evidentiary hearing on meritorious issues. Chris Eyster committed an act of fraud in federal court purposely filing

petitioner's Writ of Habeas Corpus out of time. Counsel also failed to present petitioner's appeal in state courts as a Direct Appeal "Nunc pro-tunc", since he was unconstitutionally denied his right to Direct Appeal without a waiver.

Had post-trial counsel been competent and effective petitioner more likely than not would have been vindicated and the conviction overturned.

Because petitioner was deprived of effective assistance of counsel he was convicted on a violation of law he was actually innocent of in a grievous miscarriage of justice. His continued incarceration and subsequent federal conviction is repugnant to the United States Constitution, justice and the Magna Carta. His rights have been violated under the 4TH, 5TH, 6TH, 8TH, 9TH, 10TH, and 14TH Amendments and federal statutes 18 U.S.C., Section 241, and 242; 29 U.S.C., Section 794; and 42 U.S.C., Section 5309.

Petitioner was prosecuted throughout this state action in the "Constructive absence of Counsel".

C.   Actual Innocence

1.   Petitioner is actually innocent of the violation charged, 18 Pa.C.S., Section 6106 (1988) Feb 24, 1989, "Firearms not to be carried without a license", licenses and Sportsman's Carry Permits were produced in records and evidence at trial, (Exhibits #1 & 2).

(TT, D-1, pg 47, lines 22, state police Richard Myers):

     ".. and I asked him about a hunting license, which he did produce."

(TT, D-2, pg 15, lines 2-6 judges chambers judge Falcone and Asst.D.A. Ken Zak):

Judge:        "Do you have a problem giving him the licenses for this purpose?"

Asst D.A.     " Your Honor, if the only reason why he wants to put the defendant on the stand is to authenticate the license, I would stipulate -- "

(TT, D-1, pg 48, lines 17-20, state police Richard Myers):

"after he produced the two provisional permits for the two Rugers, that's when he produced the provisional permit for the Dan Wesson.357,.."

Petitioner did have licenses and Sportsman's Carry Permits. There is no way the prosecution could have proven the required element, "lack of license" beyond a reasonable doubt, such licenses and permits were in evidence and court records. Petitioner's conviction and sentence was obtained in violation of his 5TH, 6TH and 14TH amendment rights.

Petitioner qualified under 18 Pa. C.S., Section 6106, Exceptions (b)(4), "Target Shooting", and (b)(9), hunting and fishing, stating he was target shooting at his location and was preparing to go hunting on Feb 24, 1979, (Exhibit #1). There is nothing under statutory text with Constitutional and statutory Construction, application, and interpretation that denies petitioner these two exceptions under (b)(4), and (b)(9), (Exhibits #5 A-D), 1, Pa. C.S., Section 1921, et. seq. .

Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."

"The simple inevitable conclusion is that Fiore's conviction fails to satisfy the Federal Constitutional demands."

at 633

In petitioners present case, like Fiore, failure to possess a license was a basic element of the crime and the state failed to prove that petitioner did not have a license beyond a reasonable doubt.

2. Petitioner's lawful activity of target shooting in preparation for a safe hunt and placing guns loaded on the seat of his parked vehicle was not a violation of law. (Exhibit 1), and the prosecutor and witnesses misled the jury to believe it was. Defense counsel was ineffective for not objecting and establishing this critical point of law to the jury.

The Commonwealth and prosecutor have penalized the petitioner for the exercise and enjoyment of a civil right which Constitutionally prohibited, and gives rise to a claim of selective and vindictive prosecution, D. Bordenkircher v Hayes 434 US 357, 363 (1978).

"to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort... and for an agent of the state to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional."

In Fiore v White 148 L Ed 2d 629, (2001), W.D.Pa., Allegheny County, the defendant was charged and convicted for "operating a hazardous waste facility without a permit, although court records show he had a permit, the Commonwealth argued it wasn't proper use, the United States Supreme Court reversed the conviction stating:

"This courts' precedents makes clear that Fiore's conviction and continued incarceration on this charge violate the due process. We have held that the Due Process

A penal statute requires "fair warning" and must be strictly construed, Title 1, Pa. C.S., Section 1928 (b) (Exhibit #5 B) and must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (Village of Hoffman Estates v. Flipside 455 US 489, as cited in Com. v Ludwig 55 D & C, 4TH, 2001, at 456).

"A statute can be challenged as applied if the law does not with sufficient clarity prohibit the conduct against which it sought to be enforced, Palmer v City of Euclid 402 US 544 (1971). A party may test a law for vagueness as applied only with respect to his or her particular conduct; if a statute is vague as applied to that conduct, it will not be enforced even though the law might validly be imposed against others not similarly situated." Com v Ludwig at 458

To find petitioner guilty of the charge for loaded guns, violates the 14TH Amendment as impermissably vague.

- 110 -

3.    The law used to convict the petitioner 18 P.C.S., Section 6106 (1988) (Exhibit #1), was void and therefore the conviction, sentence, and punishment was imposed without authority of law and violated the Due Process Clause under the Fourteenth Amendment.

The statute applied at trial July 13th and 14th, 1989, was voided by new amended law enacted by Act #158 of Dec 19, 1988, and became effective in 180 days on June 17, 1989. The old statute had no savings clause to maintain prosecution for the alleged violation. The new amended law availed petitioner of (3) three viable defense exceptions (b)(4), (b)(9), and (c), (Exhibits #3+4).

In Yeaton (The General Pinkney v U.S. 5 Cranch, 281, 283, 3 L Ed 101, chief justice Marshall said:

"It has long been settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."

Chief justice Taney observed in Maryland v Baltimore & Ohio R.R. Co., 3 How 534, 552, 11 L Ed 714, :

"The repeal of the law imposing a penalty, is of itself a remission."

The court in U.S. v Tynen, 11 Wall 88, 95, 20 L Ed 153, stated :

"There can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offense be at the time in existence."

4.     Had the jury been informed that :

1. "lack of license", had to be proven beyond reasonable doubt
2. petitioner had and produced licenses and permits.
3. loaded guns in vehicle was not a violation of the statute.
4. no licenses or permits were required to target shoot.
5. Charging statute was void at the time of trial.
6. New amended law in effect at trial provided petitioner 3 exceptions

petitioner would have been found innocent of the charge !

D. Prosecutorial Misconduct

The prosecutor with held exculpatory evidence and facts he knew would tend to prove petitioner's innocence. He knew, had to have known as one schooled in the arts and science of law, that:

1. There was no violation of Criminal Statute
2. Given Constitutional and Statutory Construction, interpretation and application of law petitioner qualified for 18 Pa.C.S., Section 6106 (b)(4), and (b)(9) exceptions.
3. The Commonwealth and it's political subdivisions were prohibited from questioning, abridging, or transgressing petitioner's civil right to bear Arms or the exercising and enjoyment of that right forever.
4. Loaded guns in petitioner's vehicle was not a violation and to convict on such premise violated the 14Th Amendment
5. Commonwealth could not prove element of charge nescessary for conviction "lack of license" beyond reasonable doubt under strict construction of penal statute, 1, Pa.C.S., Section 1928 (Exhibit #5,c).

-113-

6. Prosecutor's arguement that "only guns legal to hunt with were excepted" violated 1 Pa.C.S., Sections 1932, 1933, and 1934 (Exhibits #5D), which creates a nullity in statutory text.

If — only guns legal to hunt with are excepted

Then — only guns legal to fish with are excepted

To resolve the conflict, since you cannot take a fish with a gun, the application of rule must be so construed (in para materia) to give meaning and affect to all parts, and therefore any legal firearm is excepted to carry when hunting or fishing but not necessarily legal to hunt or fish with.

7 His actions violated federal Constitutional rights and statutes under the 6TH, 8TH, 10TH, and 14TH Amendments and 18 U.S.C., Section 241 — Conspiracy to Deprive of civil rights and 242 — Deprivation of civil rights and Handicap Laws 29 U.S.C., Section 794, and 42 U.S.C. Section 5309.

-114-

8. The prosecutor knew that petitioner qualified for handicap exception under the Game Code Title 34 Pa.C.S., Section 2923 but discriminated against his handicap rights, (Exhibit #16).

9. The prosecutor failed to inform the court that the charging statute was amended and repealed without savings clause or force of law to convict, (Exhibit #3 & 4).

10. The prosecutor failed to inform the court that new amended statutory law in effect at the time of trial July 13, and 14, 1989, availed the petitioner of 3 three exceptions to the charge, (b)(4); (b)(9); and (c), amended by Act #158 Dec 19, 1988, effective in 180 day on June 17, 1989, (Exhibit #3 & 4).

6106 (b)(4)  "Target shooting" "any person" can
     (b)(9)  hunting and fishing exceptions
     (c)  Sportsman's Carry Permit was valid for any legal firearm when carried in conjunction with valid hunting or fishing license.

The prosecutor used inciting and inflamatory language to prejudice the jury and used characterizations to present him unfavorably and villanized him, (TT, D-2, pg 59, lines 20-21, Ken Zak):

"Speaking of revolution - sounds like something out of a Poncho Villa movie,"

The prosecutor allowed and supported false statements of law made by the Pennsylvania State Police, (TT, D-1, pg 60, lines 9-10, state police Richard Myers):

"No, he became upset when I questioned his legality of having them guns loaded in the car."

(TT, D-1, pg 77, lines 7-9, state police William Marino):

"Basically, he did not appear to understand that he was not permitted to have possession of the loaded firearms in his vehicle."

Prosecutor's knowledge of new amended statute is supported by the fact that only in the new amended law text does the statute require

loaded guns be unloaded and stored in seperate secure containers from ammunition before transport, (Exhibit #3). Such imposition of new burdens, duties, and obligations cannot be applied to acts before the implementation of effective law, it would violate the Ex Post Facto Clause

At trial judge John Falcone clearly prohibits the introduction or reference to other guns and ammunition not directly related to the charged offense, in his chambers before trial with attorneys (TT, D-1, pg 6, lines 1-12, judge John Falcone):

".. testimony pertaining to anything other than the three handguns would be irrelevant at that time and I'm going to instruct the attorneys and the attorney to instruct his witnesses to avoid testifying to anything other than the handguns that were found in the vehicle and any ammunition, whether it was in the handgun or in the vehicle that would fit the handguns. So as to the second part of the Motion, to exclude everything but handguns and ammunition in it, I'm denying that and allowing the Commonwealth to offer testimony pertaining to handguns ammunition that would fit the three handguns that were in the vehicle, Okay?"

The prosecutor violated the judges ruling and prejudiced the jury by introducing arguments and testimony relevent to guns not related to the offense charged to influence and imply false conclusions and guilt, (TT, D-1, pg 22 lines 2-4, District atty East Ken Zak):

"State Game Commission is called because of the rifle as well as other weapons in the car of which happened to be loaded."

(TT, D-1, pg 33, lines 6-8, state police Richard Myers):

"... I saw the rifle that was actually sitting across towards the floor on the passenger's side of the seat."

(TT, D-1, pg 33, lines 23-24, Court Exhibits Submitted):

"(Whereupon, Commonwealth's Exhibits Nos. 4 and 5 were produced and marked for identification.)"

The prosecutor's misconduct misled and mis-informed the jury and malaciciously slandered the

petitioner to obtain a conviction on improper, irrelevant, facts and inflamatory and inciting characterization. He withheld facts of law and evidence and falsely led the jury to believe his exercise and enjoyment of a civil right in target shooting, in preparation to a safe hunt, was a violation of law. It was neither a violation of the old statute or the new amended statute in it's application. The prosecutor then and now has used avoidance and deception to avoid the facts in selective and vindictive prosecution and abuse of power exceeding their authority and terpitude to obtain an unwarranted and maliscious conviction in a miscarreage of justice.

Without such prosecutorial misconduct petitioner would have been found not guilty.

E.                          Violated Handicapped Rights

Federal law - Title 29 U.S.C., Section 794, (Exhibit 6), and 42 U.S.C., Section 5309 (Exhibit 7), prohibits handicap discrimination. The petitioner was adjudicated totally disabled by the Common- wealth of Pennsylvania Bureau of Worker's Compensation on July 2, 1988, and was a licensed hunter permitted by Title 34 Pa. C.S., Section 2923, to use his vehicle as a shooting platform. Petitioner's arrest, prosecution, conviction, sentence and punishment violated his handicapped rights as a licensed hunter, engaged in target shooting, and violated federal law.

Petitioner was adjudicated totally disabled on July 2, 1988, from a work injury, and was totally disabled on Feb 24, 1989, the day of the alleged violation. Trial records and transcripts indicate petitioner asserted this, (TT, D-2, pg 60, lines 20-25, Asst. D.A. Ken Zak):

"He's given us every possible excuse that he can think of why he was out there messing with these guns. Well, I was fishing; well, I was hunting; well, I was target shooting; oh, my doctor said I should walk because I have a problem with my knee."

(TT, D-1, pg 117, lines 4-12, Defense atty J. D'alba and Defendant, Douglas B. Leuschen):

Q:    "Okay. Tell us in your own words, Doug, where you were, what were you doing?"

A:    "Well, I was involved in therapy for my knee at the time and the doctor recommended that I get exercise. I was limited on the distance I could walk because of the aggravation of the injury, so I was target practicing, and the walking to and from where I was shooting from the targets was pretty much the exercise I got for my knee. I went out on good days when my knee felt good..."

Petitioner has explained that his activities were objective activities he enjoyed and provided therapeutic benefit, for his disability of derranged right knee, (TT, D-1, pg 122, lines 4-16, Defense atty J. D'alba, and Defendant Douglas B. Leuschen):

Q:    "How frequently did you go to physical therapy at this point?"

-121-

A:    "If I wasn't working, I had physical therapy on a daily basis, sometimes twice a day. Seeing a physical therapist was usually once or twice a week."

Q:    "So it would be correct to say hunting was not the sole purpose of you going out in the woods that day?"

A:    "No it was not. The doctor would recommend that I walk to exercise my knee."

Federal law 29 U.S.C., Section 794, (Exhibit #6), and 42 U.S.C., Section 5309, (Exhibit #7), prohibits otherwise qualified individuals with a disability, solely by reason of her or his disability to be exclude from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity. Under 29 U.S.C., Section 794, subsection (b) "Program or activity" defined:

    "For the purposes of this section, the term "program or activity" means all of the operations of-

(1)(A) "a department, agency, special purpose district, or other instrumentality of a State or of a local government; or"

(B) " the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;"

under 42 U.S.C., Section 5309 " Nondiscrimination in programs and activities" subsection (a) "prohibited conduct", (Exhibit # 7 A).

(a) ... " Any prohibition against discrimination on the basis of age under the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et.seq.] or with respect to an otherwise qualified handicapped individual as provided in section 794 of Title 29 shall also apply to any such program or activity."

Petitioner was discriminated against and denied a handicap exception in his lawful activity target shooting, petitioner would have been found not guilty by the jury otherwise.

- 123 -

F.    Misapplication of Statute

The states' constitutionally and statutorily repugnant application of law, 18 Pa.C.S., Section 6106, violates the 5TH, 6TH, and 14TH Amendment rights in "fair warning" notice, Due Process, and Equal Protection and Enforcement of the Law.

1.    The Commonwealth in their prosecution set forth that loaded guns in petitioner's vehicle was a violation of 18 Pa.C.S., Section 6106 (1988) (Exhibit #1 ). This interpretation violates Title 1 Pa.C.S., Section 1928 (b), (Exhibit #5,c) :

(b) "All provisions of a statute of the classes hereinafter enumerated shall be strictly construed :

(1.)  Penal Statutes    "

Such unstated conditions "loaded guns in vehicle", failed to give "fair warning", was ambiguous, and the rule of lenity must apply. In Village of Hoffman Estates V Flipside 455 US 489 as cited in Commonwealth V Ludwig 55 D & C 4th, 2001, at 456, the law "must define the criminal offense with sufficient definiteness that ordinary people

- 124 -

can understand what conduct is prohibited
and in a manner that does not encourage
arbitrary and discriminatory enforcement."

"A statute can be challenged as applied
if the law does not with sufficient clarity
prohibit the conduct against which it sought
to be enforced, Palmer v City of Euclid
402 us 544 (1971). A party may test a
law for vagueness as applied only with
respect to his or her particular conduct; if
a statute is vague as applied to that conduct,
it will not be enforced even though the law
might validly be imposed against others not
similarly situated."

Com v Ludwig at 458


2.       The prosecution and court denied petitioner
the (b)(4) Exception of Target shooting because
he was not a "member of any organization.."
and deprived him of a civil right by unconstitutional
class restriction, which violated Title 1 P.C.S.,
Section 1922, (Exhibit #5,c).

Section 1922 "Presumptions in ascertaining legislative intent"

(3) "That the General assembly does not intend to violate the Constitutions of the United States or of this Commonwealth."

and Title 1, Pa.C.S., Section 1925 "Constitutional Construction of Statutes" requires all statutes to be construed with constitutional interpretation and application, (Exhibit #5,c).

Proof of 18 Pa.C.S., Section 6106 (1988), (b)(4) exceptions unconstitutionality is in it's remission, by Act #158 of 1988, Dec 19, and implementation of amended law, changing "members of any organization.." to "any person" can target shoot, (Exhibits #3+4).

3.    The prosecutor and court misled the jury on the 6106 (b)(9) exception which was statutorily repugnant to 1 Pa.C.S., Section 1932 "Rules in Para materia" which requires all statutes to be construed to give meaning to all parts and other statutes, (Exhibit #5,D).

(Exhibits #1 ):

(c) "Registration required in connection with field or stream exemptions — Before any exemption shall be granted under paragraphs (b)(9) or (b)(10) of this section to any person licensed to hunt or fish ...."

To require a Sportsman's Carry Permit to target shoot under the (b)(4) exception violates 1 Pa.C.S., Section 1928 (b), (supra), and the 14TH Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution en "fair warning"

Had the charging statute been properly presented to the jury pursuant to Due Process, fair warning, without unconstitutional class restriction, and with strict interpretation of laws, and in pari materia the jury more likely than not would have found the petitioner not guilty. He was actually innocent of the alleged violation.

G.  Statute Violated the Constitutions

Petitioner states his Pennsylvania Constitutional right to bear arms was violated by the Commonwealth and it's political subdivisions. Title 18 Pa. C.S., Section 6106, cannot be given force or authority of law without a Constitutional Amendment which would still be repugnant to Article I, Section 25, (Exhibit #1, #8D).

Petitioner's claim is a cognizable claim because it violates the equal protection and enforcement of state law and rights under the 14th Amendment of the United States Constitution. Rights which are recognized and guaranteed by the Constitution, to the citizens of the Commonwealth, were abridged and petitioner was denied this protection in the lawful exercise and enjoyment of a civil right under Article I, Section 21, (Exhibit #8C).

The right to keep and bear arms is an inherent and indefeasable right that existed before the Constitutions were founded and was so recognized in the language and extent of Article I, Section 21, 25, and 26, (Exhibit #8C&D).

The violation of civil rights, defined in the State Constitution are protected and guaranteed through the 10th and 14th Amendments of the United States Constitution. The government's derived powers cannot exist unless they have originated from the individual and to profess one has such power to deny the originator, of that power, is ludicrous.

The king ought not do that which is against the law, for it is the law which makes him king.

In U.S. v Cruikshank et al. 92 US 542, (1875), the United States Supreme Court stated:

"The Fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; but this provision does not, any more than the one which precedes it, and which we have just considered, add anything to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally

assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty.

Article I, Section 21, of the Pennsylvania Constitution mandates the right to bear arms shall not be questioned. Article I, Section 25 states to guard against the transgressions of the high powers which we have delegated we declare everything in Article I, is excepted out of the general powers of government and shall forever remain inviolate. Article I, Section 26 prohibits the Commonwealth and its political subdivisions from denying to any person the enjoyment of any civil right, nor shall they discriminate against any person in the exercise of any civil right.

The petitioner's activity of target shooting in preparation for a safe hunt with valid hunting and fishing licenses and Sportsman Carry Permits was and is a state Constitutionally protected right.

The Judiciary was specifically prohibited from violating, abridging, modifying, or enlarging any persons' civil rights under Article I, Section (10)(c), and 17; and all officers of the Judiciary swore an "Oath of Office" to uphold the Constitutions of the United States and of Pennsylvania under Article VI, Section 3, (Exhibit #8 E,F,G).

Petitioner now looks to the Federal government to enforce and protect that right through the 14TH Amendment.

Not to enforce and protect that right to bear arms, would violate the 2ND Amendment, whereby the federal government would be conspiring with a foreign state power to abridge both Federal and State Constitutions.

The 10TH Amendment recognizes reserved powers in the state or to the people. The Pennsylvania Constitution has emphatically expressed specific prohibitions against the Commonwealth and its political subdivisions from infringing, questioning, denying, or abridging certain powers and rights inherent and indefeasible in the individual person as citizen.

Quis custodiet ipso custodes?

-131-

H.   Petitioner's search, seizure and arrest
     Violated the 4th Amendment of the United
     States Constitution.

     The state police had no probable cause to
stop or detain petitioner for expired tags on Feb. 24,
1989.   Officer Richard Myers detained the
petitioner at his residence several months earlier
and threatened to cite him for expired tags if
he caught him on the road with his car. Petitioner
presented documents, letters, and correspondence
from state representatives Karl Boyes and Jim
Merry, Virginia Department of Motor Vehicles
and District Justices Robert Stuck and Charles
Wise who were assisting him in obtaining car
title from Virginia. Without a car title petitioner
could not obtain Pennsylvania tags, title and
registration or Pa. Inspection, although he did
have proof his car met Pa inspection requirements.
     On Feb. 24, 1989, officer Myers cited petitioner
for expired tags and district justice Robert Saxton
fined him for expired tags. Officer Myers had the
opportunity to review this cause of action earlier
and did not and should not be grounds later

for probable cause. Petitioner was wrongfully cited and denied his due process rights to call witnesses and present evidence to defend against the charge due to unlawful incarceration.

The state police had no probable cause to search defendant's vehicle - even seeing guns on the seat of his parked vehicle, because it indicated no violation of the criminal code (Exhibit #1). Petitioner produced valid hunting and fishing licenses and Sportsman's Carry Permits he had while out target shooting. Sportsman's Carry Permits were not required while engaged in target shooting pursuant to 18 P.C.S. Section 6106(c).

There was no probable cause to seize petitioner's guns, as loaded they were not a violation with valid licenses and permits which had been presented (Exhibit #1). The statute did not require guns to be unloaded in the vehicle and such imposed condition violated the 14TH Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, in "fair warning".