1    a simple man, a quiet man and a peaceful man who enjoys

2    the simple things in life.  He enjoys and appreciates

3    the unsurpassed beauty that exists in nature.  Most of

4    us will be denied the great prizes in life, the

5    Pulitzer, the Nobel Peace Prize, the Oscars, the Tonys,

6    and the Emmys; but we are all eligible for life's

7    simple pleasures, a pat on the back, a four-pound bass,

8    an empty parking space, a crackling fire, a gorgeous

9    sunset, hot soup or cold beer.  Well, Douglas Leuschen

10   will never be awarded the Nobel Peace Prize or perhaps

11   an Oscar or a Tony.  He does cherish these simple

12   things, yet the prosecution seeks to condemn this man.

13   And their proof for their request for you to condemn

14   him is that he hunts woodchucks in February.

15        There is a lot of curiosities about the world as

16   we all well know.  There is a lot of curiosity through

17   the history.  And about 150 years ago there was a man,

18   he took his gun, he borrowed his neighbor's ax, he went

19   down by a pond and he dug a hole.  He lived in that

20   hole for several weeks and then even more curiously, he

21   went and bought his neighbor's house.  But instead of

22   moving in the house, he took the house down and moved

23   into his hole next to the pond and rebuilt the house.

24   And there he stayed in that house on top of his little

25   hole for two years and two months.  This is in Concord,

1   Massachusetts.  You can imagine what some of the people
2   thought about this curiosity, this stranger.  Probably
3   some of them thought he was weird and probably a lot
4   more.  But that man was a man by the name of Henry
5   David Thoreau, and he explained his behavior as
6   follows:  He said, quote, I went to the woods because I
7   wished to live deliberately to front only the essential
8   facts of life, and to see if I cannot learn what it had
9   to teach, and not when I came to die, discover that I
10  had not lived.  And we hold these words out with great
11  pride as a tremendous example of the accomplishments of
12  one of our greatest literary individuals.  But yet at
13  the same time here in this courtroom today, the
14  prosecution seeks to condemn a man who is attempting
15  and who has tried to fulfill that same dream.

16      The law in this case, ladies and gentlemen, is
17  relatively simple.  The charge is carrying a firearm
18  without a license, that's the general rule.  Now, there
19  are two exceptions to that general rule that I think
20  are important today.  Now, you have been told earlier
21  and I'm going to say it again, the Judge will instruct
22  you subsequent to my closing argument and to Mr. Zak's
23  closing argument on what the law is.  But briefly,
24  those exceptions say that if you're target practicing
25  or hunting, you're going to or from those places or in

1    the act of hunting or target practicing, you're allowed

2    to carry those pistols.

3         Now, the Commonwealth has the burden of proving a

4    violation of this law, and the standard of proof in

5    this case is beyond a reasonable doubt.  Now, we have

6    all heard that term many times and we have an idea of

7    what it means.  Let me give you the legal definition of

8    it because I think it's important to know and I think

9    the more a jury knows, the better qualified a jury is

10   to render a decision.  A reasonable doubt exists if in

11   considering all the facts and circumstances in

12   evidence, you're caused to pause or hesitate in

13   reaching your conclusion.  Ladies and gentlemen, I

14   suggest to you that there is not one nor two nor three

15   reasonable doubts in this case, but the whole case

16   that's been presented by the prosecutor from beginning

17   to end raises nothing but reasonable doubt after

18   reasonable doubt after reasonable doubt.

19        I anticipate that the prosecution is going to get

20   up here and tell you he wasn't target practicing, he

21   wasn't hunting, we don't know what he was doing, but he

22   wasn't doing those things.  And I suggest to you that

23   the evidence is just plain inconsistent and refutes

24   that statement.  The prosecution's own witnesses,

25   everything that they testified to just about is

1   consistent with the defense's not only theory, but

2   facts of what occurred in this case.

3       Trooper Myers got on the stand.  He told you where

4   this took place, out on the US Steel property.  What's

5   out there?  Thousands of acres of woods, no houses,

6   amusement parks, no nothing like that.  What do people

7   do out there?  They hunt.  What was the defendant

8   wearing?  He was wearing camouflage hunting clothing.

9   Did the defendant have his hunting license with him?

10  Yes, he did.  What kind of boots was he wearing?  He

11  was wearing hunting boots.  What did the defendant tell

12  Trooper Myers?  He said he was out hunting, I was out

13  target practicing.

14      Trooper Marino testified to the same thing.  He

15  told you that the defendant told him what he was doing,

16  using the guns while hunting, while target practicing.

17  The officer from the Game Commission also told you the

18  same thing.  So I suggest that the prosecution's case

19  is entirely consistent with the defendant's case, that

20  the objective evidence presented by the prosecution

21  proves that the defendant was indeed hunting and/or

22  target practicing at the time that this occurred.

23  Moreover, these facts were confirmed by the defendant's

24  witnesses.

25      We brought in people that know Mr. Leuschen,

1    either personally or through profession.  The
2    profession being the man, Mr. Seaman, that owned Elk
3    Creek Sports Store.  Mr. Seaman told you that Mr.
4    Leuschen is one of his regular customers, he comes in
5    throughout the year.  He's an avid sportsman.  He buys
6    targets, he buys ammunition, he buys guns, he buys
7    fishing equipment.  You also heard from our other
8    defense witnesses who have been out hunting with Mr.
9    Leuschen, hunting that area, hunting in other areas.
10   They told you about his past experiences and the fact
11   that he is indeed an avid sportsman.
12       The defendant also -- he didn't have to take the
13   stand, although we are in the other courtroom, he
14   didn't have to take the stand and testify on his own
15   behalf, but he did -- he wanted to.  He wanted to tell
16   you what happened, what his side of the story was.  You
17   saw him, you observed him and I believe that you
18   observed him to be a credible, believable and truthful
19   witness.  Why did I think you reached those
20   conclusions?  Because that is the impression that he
21   can make.  And why did he convey that impression,
22   simply because he was speaking the truth.
23       Ladies and gentlemen, just ten days ago we
24   celebrated the 4th of July.  And today, all in the
25   history of free society and a free world, somewhat free

50

1    world, is an important day, and that's Bastille Day and

2    all of France is celebrating it today.  And today is

3    the bicentennial, the 200th Anniversary of the storming

4    of the gates at the Bastille Prison where thousands of

5    political prisonors were freed.  They were fortunate

6    enough to be let loose prior to being executed by the

7    guillotine as twenty thousand people were before them.

8        And both the 4th of July and Bastille Day are

9    great celebrations of freedom and great celebrations of

10   world liberty they are remembered with parades and

11   picnics and fireworks.  And the American Revolution

12   lead to the Bill of Rights, the French Revolution lead

13   to the Rights of Man.  Both of these documents are

14   tremendous keystones to the world of democracy, of

15   freedom.  Both of these documents are simply paper upon

16   which words have been written, they have no ability to

17   act, no ability to do anything other than influence.

18   In other words, unless put to action, those documents,

19   those words are worthless.

20       So the final thought that I'm going to leave with

21   you today is this, it's one of courage.  Mr. Zak

22   promised you in his opening statement, he said, I

23   promise we will prove beyond a reasonable doubt Mr.

24   Leuschen's guilt, and I suggest to you that the

25   prosecution has not in any way delivered on their

1  promise.  Have the courage to tell the Government no.

2  Stand up and say this is not what America stands for

3  and we will not stand for it today in this courtroom.

4  And while we can't bring back to life the thousands of

5  people who died in the American Revolution, in the

6  French Revolution, all the great heroes and patriots

7  who have come since then, we can honor or cherish their

8  memory today in this courtroom when you return a

9  verdict of not guilty on all counts.  Thank you very

10  much.

11      MR. ZAK:  May it please the Court, Mr. D'Alba,

12  ladies and gentlemen of the jury.  You just heard the

13  remarks of defense counsel as to why he's arguing to

14  you that his client should be found not guilty.  I'm

15  not sure it's for you to decide whether, after all of

16  his remarks, any of us are any of the wiser.  What I'm

17  doing is speaking to you and this is the last time I'll

18  be speaking to you.  And the prosecution goes last in a

19  criminal case because we have the burden of proof.  We

20  are the ones who brought these charges, we are the ones

21  who have to prove them to your satisfaction, and I

22  can't overemphasize that.

23      Now, Mr. D'Alba made some very interesting

24  references to history.  Today is Bastille Day, and we

25  recently celebrated the 4th of July.  I think we all

52

1      know what that means.  But what both of those events

2      did, they created Governments of the people,

3      represented by  France's National Assembly and our

4      Government, by the consent of us.  And our

5      representative as we elected based on our Pennsylvania

6      Constitution, which was influenced by these events,

7      that in our revolution, as well as the French

8      Revolution, our representative is in the interest of

9      public safety.  And that's why we have Governments,

10     that's why we have democracy and republic conformance

11     of Government.  They enacted some laws for the interest

12     of public safety.

13          One of them is the Uniform Firearms Act, which is

14     why we are here today and yesterday and the day before,

15     and that's why you, ladies and gentlemen, were taken

16     away from your homes and your jobs and your other

17     interests to come into this courtroom and listen to all

18     of this and to consider all of this and deliberate on

19     it as you will do in a few minutes, that's why we are

20     here.  Because one of your fellow citizens -- and we

21     are all equal citizens -- is here accused, and you as

22     peers have to determine whether or not dispassionately

23     and honestly whether he violated those laws enacted by

24     our fairly elected representatives with the consent of

25     all of us.

1          Now, the District Attorney's office in Erie County

2     and the State Police and the State Game Commission are

3     not in the business of harassing citizens and

4     persecuting citizens.  And we are not in the business

5     of asking our fellow citizens you, ladies and gentlemen

6     of the jury, to join in anything of that type, that's

7     not what this is about.  This isn't some question of a

8     Mickey Mouse type of a Government regulation.

9          You heard a lot about hunting rules and you heard

10    a lot about firearms rules and a lot about firearms,

11    what type of firearms are proper and what type aren't.

12    Well, those are important things, very important of

13    substance not only to the law intellectually, but more

14    importantly, to our lives.  I don't have to draw a

15    picture on that easel over there as to the type of

16    damage, the type of pain, the type of tragedy that can

17    result from the improper use of firearms, that's why we

18    have firearms laws in Pennsylvania.

19         In the Pennsylvania Constitution and the US

20    Constitution, we have the right to keep and bear arms;

21    but like all rights in the Constitution, such as the

22    right to free speech, you don't have a right to scream

23    fire in a crowded theater.  There are qualifications

24    based on common sense; and you all brought your common

25    sense here, you didn't leave it at home this morning.

54

1      And common sense says that while a citizen who

2      qualifies can own what the law calls a firearm and has

3      a right to have that firearm, he does not have a right

4      to have it and use it under all conditions, all

5      circumstances.  You have come way beyond the days of

6      Dodge City in our society.  Those days are gone, may

7      they never return.  We have a civilized society or we'd

8      like to think so, and we want to make it more

9      civilized.

10         So we said, yes, you buy a handgun, you prove that

11      you're a person who can receive the handgun, you give

12      us the proper identification, you register it, you are

13      allowed to keep it in your home, in your fixed place of

14      business.  You're allowed to target shoot with it,

15      you're allowed to take it to a gunsmith, you're allowed

16      to take it with you when you move, you're allowed to

17      take it hunting, if it is suitable for hunting.  You're

18      allowed to do all those things, but you're not allowed

19      to load it up and carry it on your person just because

20      you feel like it or you think it's neat to carry a gun

21      or because of some speculation you may encounter some

22      animal you may want to shoot or because it's just your

23      thing.  No, you can't do that and you shouldn't do

24      that, that's why we have these laws.

25         And if you want to carry a weapon for a good

1    reason like self-protection or your job requires it,

2    and some of us are in that situation, then you do it

3    the right way.  You make application of the proper

4    authorities, you prove yourself a suitable American and

5    you justify it.  Yes, I have a reason, it's part of my

6    job, I have got to carry a lot of money; it's part of

7    my job, I have to protect people, I have to protect

8    myself.  There are a lot of reasons.  You have to give

9    a good reason not just because, hey, I think guns are

10    neat, that's not good enough.  And that's only right

11    and fair, and we went over some of those points in jury

12    selection, and we discussed that and I say that very

13    candidly.

14        Now, all the prosecution has to prove in this case

15    are three basic elements.  And I suggest to you and I

16    argue to you, there is no question we proved them all

17    beyond a reasonable doubt.  Number one, that Mr.

18    Leuschen was in possession of three firearms and the

19    Judge will define what a firearm is, pistol, revolver

20    or with a barrel less than 12 inches, shotgun with a

21    barrel less than 24 inches, rifle less than 16 inches.

22        Now, we have three guns here and they all qualify

23    as, quote, firearms.  We have a .357 magnum revolver,

24    holds six shots.  It was recovered loaded from the

25    defendant.  It says an eight inch barrel, you can check

56

that if you like, that's within the rule or beyond the
rule, however one interprets it.   The .22 caliber
revolver, also six shots, was recovered fully loaded
from the defendant.   And he admits that he was carrying
it the day in question.   It was in his car, loaded.
And lastly, we have a 9mm semiautomatic pistol, 15
round clip.   This is in evidence.   Two clips, one in
the box it came in and one was loaded in the weapon.
Fifteen rounds, there is a little counter here.   You
can count fifteen, you can look inside and see how many
you have.   9mm Luger ammunition, copper coated bullet,
fifteen rounds each.   This man had fire power with that
one weapon of 30 rounds, 30 shots.   And those of you
who may be in the service may be familiar with pistols,
plus one in the chamber.

MR. D'ALBA:   Excuse me, this is a semiautomatic
pistol?

MR. ZAK:   It's the expression.   Semiautomatic
pistols are often referred to as automatic pistols.
One shot each, press of the trigger until it's empty;
put in another clip, slide those forward, fifteen more
shots.   What was he hunting?   What was he hunting with
that?   What was the purpose?   Why?   It's a weapon you
could infer that's designed to be used against a target
that's shooting back, it's not a sporting weapon.   He

1     has a right to own it, but he doesn't have a right to

2     carry it into the hunting fields.  This man testified

3     that he's been a hunter since he was eight or nine

4     years old in the State of Pennsylvania.  State of

5     Pennsylvania you can't carry a semiautomatic pistol in

6     the hunting fields for hunting, you can't do that.

7          MR. D'ALBA:  Excuse me, Mr. Zak, I do hate to

8     interrupt during a closing, but I believe that's

9     incorrect.

10          THE COURT:  Address the Court, please.

11          MR. ZAK:  That's a thoroughly correct statement.

12          THE COURT:  Let's do it at sidebar.  Excuse us

13    just a minute.

14          (Whereupon, the following discussion occurred

15    on the record at sidebar:)

16          THE COURT:  Go ahead, Jay.

17          MR. D'ALBA:  Judge, he's telling the jury you

18    can't carry a semiautomatic pistol while you're

19    hunting, and I believe the judge is going to instruct

20    the jury to the contrary that you can.

21          MR. ZAK:  No, you can't.

22          THE COURT:  Carry.

23          MR. D'ALBA:  You can't.

24          THE COURT:  Are you talking about the difference

25    between carrying and using?

58

1        MR. D'ALBA:  He's saying you can't carry it, you

2   can't use it legally, but you sure can carry it and I'd

3   like the jury to be -- that to be rectified to the

4   jury, he's misleading the jury.

5        THE COURT:  Can we solve this problem by you

6   saying instead of carry, you mean to say you can't use

7   it during hunting.

8        MR. ZAK:  That's what I meant.

9        THE COURT:  I realize --

10        MR. ZAK:  See, what he's doing, he's taking that

11   out of context because in the context of the sentence

12   before that --

13        THE COURT:  But here's the thing, it's not a

14   violation of the hunting laws to carry it, it's a

15   violation to use it.  I think we ought to straighten

16   that up.

17        MR. ZAK:  Fine.

18        THE COURT:  I mean, that will get you the same

19   point.  Are you going to do that?  Why don't you do it

20   rather than me?

21        MR. ZAK:  I'll do that.

22        (Whereupon, discussion at sidebar was concluded.)

23        MR. ZAK:  In Pennsylvania, you can't hunt, shoot

24   game with a semiautomatic pistol.  So the defendant

25   tells you he did that, he was carrying this pistol for

1    purposes of hunting, he's not being very

2    straightforward and honest with you as Mr. D'Alba wants

3    you to believe, because he can't do it for hunting

4    purposes, for purposes of shooting game.

5        The defendant was also carrying a rifle.  Now, the

6    rifle is not for your consideration, but in determining

7    credibility in this case, you should be aware of this

8    rifle.  This is for the part of the case that the judge

9    only will decide, the hunting -- the game violations.

10   This is a rifle, as you all will see, with a large

11   telescopic sight on it.  It sits up pretty high.  As

12   you'll note, there is sights, you can see through here.

13   And as the trooopers testified, it's in evidence with a

14   full clip, three rounds in the clip.  .243 Winchester

15   ammunition, high-powered rifle, slide action, and he

16   had it over his shoulder on a sling, we have to infer,

17   and was carrying it in his hands.  And as he testified,

18   what was he doing with it?  He had a pistol in one

19   pocket, another one in another pocket, plus this.

20   Speaking of revolution, sounds like something out of a

21   Pancho Villa movie, ladies and gentlemen.  Hunting,

22   sportsman, it's like we are persecuting poor

23   Huckleberry Finn, nature-loving free spirit.

24       In February, he's going after the big bad

25   woodchucks who were probably hibernating.  What's out

60

1    there?  What game is out there?  We heard the game

2    proctor, our witness, we heard even witnesses of the

3    defendant, his own brother, when you shoot woodchucks,

4    you shoot them over open country.  And when they went

5    out woodchuck shooting, that's where they went.  The

6    guy who runs the gun store, he agreed with us on

7    that -- excuse me, the prosecution on that.  You don't

8    do it in the woods.

9         And then the defendant tells us, well, he was out

10   there, one of the things he wanted to do was sight in

11   that rifle, and he had targets, hundred yard targets.

12   Doesn't it make sense that when you want to sight in a

13   rifle -- these are inferences you can draw from the

14   evidence -- you have a target that's set up for a

15   hundred yards, you go to a place, an open place where

16   you knew that you had a hundred yards.  How else can

17   you adjust that telescopic sight?  You don't go in the

18   woods full of trees and foliage, you go to a rifle

19   range where it says a hundred yards, two hundred yards,

20   three hundred yards.  He's going out there to sight it

21   in.  He's given us every possible excuse that he can

22   think of why he was out there messing with these guns.

23   Well, I was fishing; well, I was hunting; well, I was

24   target shooting; oh, my doctor said I should walk

25   because I have a problem with my knee.  Well, if you

1    want to take a walk, you don't have to go out in the

2    boondocks and carry a bunch of guns around with you

3    unless you're back in boot camp.  There is no reason

4    for it.

5        There is no hunting season except for fox.  These

6    weapons are not suitable for fox, it's not a season.

7    Crow, where are the crows?  They are in Florida or

8    perhaps all of us should have been.  And where is the

9    woodchucks?  Most likely hibernating.  And as the

10    witness has said, it's unlikely you're going to see it,

11    unlikely you're going to see it.  So what's the point

12    of going to those pains, what was he doing there?  Now,

13    we don't have to prove what he was doing, but we do

14    have to prove that he didn't have a right to be

15    carrying these weapons at that time.  Now, any

16    legitimate hunter should know -- and this man had the

17    little hunting handbook, he had a hunting license, he'd

18    been hunting for years.  Common sense tells us, and the

19    law tells us that whether you're hunting or not, you

20    don't put a loaded weapon in your car, it's a

21    violation.  He was cited for that and the judge will

22    consider that.

23        Well, when the trooper approached him and started

24    questioning him, it turns out everything in his car

25    that's in evidence here was loaded, three guns fully

1   loaded, a rifle fully loaded.  So if he's been hunting

2   and he was just a simple hunter, why would he be

3   carrying fully loaded weapons?  And as the trooper

4   testified on rebuttal this morning, the man's car door

5   was closed, the engine was running.  Leads you to infer

6   this man either just pulled over after driving in the

7   car with loaded weapons or was about to drive away with

8   loaded weapons.  Are those the actions of just the guys

9   out there hunting, enjoying the great outdoors by

10  Walden Pond?  No, no, it wasn't.  And it's interesting

11  using the name of Henry David Thoreau as sort of a

12  historical character, a man of peace and civil

13  disobedience in support of someone carrying a high

14  powered military pistol, but we will let that go.

15      Now, the defendant was not all that candid with

16  you.  True, he does not have the burden of proof, but

17  you've got to consider his credibility.  And the judge

18  will tell you he is an interested witness in this case,

19  he has a stake in what happens here.  He's the guest of

20  honor, the guy on trial.  He differed with what those

21  state trooopers had to say.  He says, oh, I showed them

22  targets, I had a red hat.  They told us, hey, no

23  targets, no red hat.  He didn't tell us where he was

24  shooting or what he was doing.  He says, oh, yeah,

25  target shooting, hunting, generalities, handy

1    generalities.  Did he back that up?  Did he?  And he

2    agreed to talk to those trooopers, he talked to Trooper

3    Myers.  He wasn't under arrest for a darn thing at that

4    point.  Trooper Myers didn't have to give him any

5    rights, didn't have to do anything, they were just

6    talking.

7         When he was in court, Trooper Marino -- at the

8    station, Trooper Marino give him his Miranda rights,

9    told him his Constitutional rights.  He agreed to talk.

10   What did he say?  I was out hunting, hunting.  Where?

11   For what?  With what?  Very quiet now.  What a person

12   doesn't say is just as important, if not more important

13   than what they do say.  He agreed to talk.  And what

14   did he do?  He didn't do very well for himself.  And

15   then when he's taken away afterwards, after he's

16   arrested, he makes a scene in the back of the police

17   car.  Is that the action of a guy who just simply is

18   charged with just some Mickey Mouse violations,

19   technicalities that he's innocent of?  Are those the

20   actions of a person who is conscious of guilt?  Who

21   knows.  He's caught with a big, big no-no know, a

22   violation of the criminal law, that the police caught

23   him, and he did not want to be caught doing something

24   he wouldn't want to be caught doing.

25        Now, Mr. Leuschen says, well, I have a hunting

64

1   license; in fact, it's in evidence.  Well, he said when

2   he got back to his car after hunting, he took the

3   license off, and it's in evidence.  The license is worn

4   on the back of your jacket, and he had a zip-up

5   coverall.  So what that would mean, logically, if you

6   want to take something off your jacket that's pinned

7   on -- or off your clothes that's pinned on it, you'd

8   have to take the whole darn thing off and take it off.

9   For what purpose?  Why is it so important to take his

10  hunting license off the back of his jacket at that

11  point if it were on, if it were on?  Why would it be so

12  important to take his red hat off immediately if it

13  were there, if it were there?  And the red hat sort of

14  clashes, no pun intended, with the camouflage outfit

15  which is designed so you don't see him, that's why

16  camouflage was invented.  Doesn't seem to make a whole

17  lot of sense here.  The trooper searched the car, no

18  red hat came to their attention.  The defendant brought

19  no red hats to his attention and he's the guy who's

20  asserting, hey, I'm a hunter.

21          Fishing, he talked about fishing.  Defendant's

22  Exhibit B, you'll have a Xerox of the hunting license

23  and two Xeroxes of his provisional firearms license for

24  the .357 Magnum and the .22 pistol.  Well, those aren't

25  too readable, so we supplied you with the originals of

65

those licenses from the courthouse records.  And you'll

note, date of issue, 12-9-88 on both of them, and just

below it, hunting/fishing license number, and they are

the same license number.  You don't see a fishing

license number there because fishing is crossed out on

both of those.  Only hunting is indicated there,

fishing is crossed out.

MR. D'ALBA:  Excuse me, Your Honor, again the

Commonwealth stipulated that the man possessd a proper

fishing license.

MR. ZAK:  That's right.  But nevertheless, you

will note that fishing is crossed out by somebody and

you can make certain an inference from that that

perhaps these guns do not apply to fishing.

Now, the defense would want you to believe that a

person can just carry one of these weapons with them

while they are hunting or fishing, and perhaps not even

with the intention of shooting game, just carrying that

for some -- whatever reason.  But the law does provide,

and the Judge will instruct you on this, that in order

to carry such a weapon for those purposes, even if

those were the purposes, and we don't concede that,

there has to be one of those little licenses that I

just showed you.  Well, he had licenses of that type,

and those are very limited, for the .22 revolver and

66

1    the .357 revolver.  But he has no license of any sort,

2    whatsoever, for the 9mm, so there is no way he's not --

3    he can be not guilty on the 9mm, no way.  He had no

4    provisional license for hunting or fishing with it, he

5    fit into none of the exceptions here, he couldn't use

6    it for hunting.

7        MR. D'ALBA:  Excuse me, Your Honor, but it does

8    fit the exception for target practicing for official

9    license required.

10       MR. ZAK:  Your Honor, I can't tolerate this.  This

11   man has argued --

12       THE COURT:  Let's do it at sidebar fellows, come

13   up here.

14       (Whereupon, the following discussion occurred

15   on the record at sidebar:)

16       THE COURT:  I'm going to instruct them and explain

17   the difference between the two exceptions, and I think

18   I ought to do that now to clarify that.

19       MR. ZAK:  Well, I'd like to continue my argument,

20   Your Honor.

21       THE COURT:  Well, I just want to instruct them.

22       MR. ZAK:  This is a tactical move to interrupt my

23   argument.

24       MR. D'ALBA:  You're misstating the law.  The Judge

25   is telling you you are wrong.

1          MR. ZAK:  I did not misstate any law.

2          THE COURT:  I'm going to instruct them to get them

3     on the right track, then I can --

4          MR. ZAK:  I stated it just the way you instructed

5     me to state it.

6          THE COURT:  Okay.  All right.

7          (Whereupon, discussion at sidebar was concluded.)

8          THE COURT:  Ladies and gentlemen, I just want to

9     clear up a point at this time.  When counsel is

10    finished, I will instruct you on the law.  And during

11    the course of the trial, there are two possible

12    exceptions that have been referred to.  District

13    Attorney Zak is talking about one of them now and

14    Attorney D'Alba has been talking about the other.  When

15    they finish, I will try to clarify them so that you'll

16    have a better understanding of which exception, if any,

17    applies.

18          You may continue.

19          MR. ZAK:  Thank you, Your Honor.  Any discussion,

20    any statement along that line that Mr. D'Alba has made

21    in this case concerning the law or I have made

22    concerning the law, you're to be guided by what the

23    Judge says the law is and what it isn't.  Although I do

24    not believe that any misstatements of the law have been

25    made, at least from this side of this case.

1    Now, there is no way, as I stated before, that the

2    defendant can be found not guilty consistent with your

3    oath of jurors on the 9mm.  As for the .22 and the

4    .357, you have to decide, and the Judge will instruct

5    you, you have to decide if he actually was hunting or

6    target shooting with those weapons, and if he actually

7    was coming to and from hunting or target shooting.

8    That's only if you decide if he was hunting and/or

9    target shooting or coming to and from.  The Judge will

10   read you the very narrow exception on the law on that,

11   and I am confident that when you hear what the Judge

12   has to say on that, you cannot find him not guilty,

13   you'll have to find him guilty on that, just on the

14   basis of law and the facts.

15       Now, the defendant throughout this case,

16   throughout his testimony, was less than candid.  I

17   asked him on cross-examination, at one point, his

18   address.  Simple question, what is your address.  His

19   answer, 257 West 21st Street, Erie, Pennsylvania.

20   Okay.  Well, you'll take a look at this, it's going to

21   go out with you, these firearms licenses dated 12-9-88,

22   the provisional ones for hunting, 2815 Homer Avenue,

23   Erie, Pennsylvania.  Different address.  On rebuttal,

24   we established that he told Trooper Myers that he was

25   living out of his car at the time and then we have him

1    also giving the Homer address to the trooopers one

2    time.  Why have we got different addresses here, living

3    out of the car, Homer Avenue, West 21st Street, what's

4    the problem?  Can't the guy get his address straight?

5         And then he was all in a lather, all upset, this

6    trooper was too interested in him.  Here's a trooper

7    that's worked for over 20 years, mostly in this county,

8    in the west county.  He patrols that area, he

9    personally hunts that area, he knows that area, he's a

10   sworn officer of the law and an experienced officer of

11   the law, and he was doing just what we pay him to do.

12   He sees a vehicle on the side of the road, driver with

13   his head down, alone, then turns out there is out of

14   state plates, out of state.  No less, he wouldn't be

15   doing his job, it would be shame on him if he didn't

16   stop and start asking questions.

17        Now, what does he see?  That rifle in the front

18   seat.  Let's get out of the car, let's talk.  And one

19   thing leads to another.  It's like those clown tricks

20   when one handkerchief after another comes out of the

21   hat; one gun after another and loads of ammunition,

22   regular ammunition, hollow-point ammunition, all kinds

23   of ammunition comes out.  Something is wrong.  And then

24   this guy is getting nervous and frustrated acting, hey

25   you're raining on my parade, Mr. Policeman.

1        The policeman didn't arrest him then, not because

2   the defendant was not guilty, not because he didn't

3   have a darn good case at that point, but the officer

4   explained it.  I didn't arrest him for a very simple

5   reason.  I know enough that I'm not going to go

6   one-on-one against a guy, and I don't know what he's

7   got.  I patted him around his waist as best as I could.

8   The defendant denies that.  Who knows why he denies

9   that.  I'm away from my radio, I'm away from my car,

10  I'm working alone, I can't turn my back on this guy, so

11  it's the next best thing.  I have got his guns, he

12  certainly wants his guns back.  I'll take his guns and

13  we will go to the station.  And it doesn't matter a

14  whole lot who drove first or who drove last, it's

15  better the defendant drove first so the trooper can

16  watch him better.

17        And the trooper gets on the radio to get to the

18  station, his coworkers, fellow troopers come out.

19  Situation is hand-in-hand.  They walk the man in, they

20  get a statement, they charge him, they do things in the

21  proper, civilized manner.  Nobody gets hurt and

22  everyone's rights are protected, including Trooper

23  Myers' rights.  So that's no evidence against the

24  Commonwealth, that doesn't mean he was not guilty just

25  because he wasn't arrested on the spot.  In fact, it

1    indicates the -- of course, it supports Trooper Myers'

2    suspicion and his actions, based on his years of

3    experience and his good sound judgment, acting in the

4    public safety as a police officer.

5        Now, the Judge is going to instruct you on

6    reasonable doubt.  Mr. D'Alba referred to reasonable

7    doubt.  You can't find the defendant guilty unless you

8    find him guilty beyond a reasonable doubt.  Now, that

9    doesn't mean all doubt, that just means the kind of

10   doubt that restrains a reasonable person acting in that

11   great importance to himself.  Well, a lot of wise

12   people think hey, maybe there is a little doubt about

13   everything, but we are not here to discuss philosophy.

14   We don't have to prove this case to a mathematical

15   certainty, we don't have to eliminate all possibilities

16   of innocence.  We have to prove this case beyond a

17   reasonable doubt.

18       I suggest to you, ladies and gentlemen, this case

19   has been proven well, well, far beyond a reasonable

20   doubt.  And we are here, you know, and as I began, we

21   are here in the interest of not giving the defendant a

22   hard time, we are here in the interest of public

23   safety, public order, responsibility and of sanity.

24   That's why we are here, and that's why this prosecution

25   was instituted, that's why we are pursuing it.  And we

1    are asking you to agree with us, go to that jury room,

2    consider the evidence impartially and render a proper

3    verdict.  And don't concern yourself, as the judge told

4    you, with extraneous matters.  Penalty is irrelevant,

5    the judge will decide that.  The issue is you have got

6    to call them as you see them, call them as you see

7    them.

8        Tell Mr. Leuschen no, we are representatives of

9    the community, we are your peers, we have considered

10   it.  You have had your day in court, you have had your

11   fair trial, I'm sorry, but you're guilty.  Thank you.

12       THE COURT:  Thank you, Mr. Zak.

13       Ladies and gentlemen, as you know, it's a

14   fundamental principal of our system of criminal law

15   that every defendant, including Douglas Burton

16   Leuschen, is presumed innocent.  Therefore, the mere

17   fact that he was arrested and is accused of this crime

18   and is on trial is not evidence against him.

19   Furthermore, Mr. Leuschen, as you have heard everybody

20   tell you, is presumed innocent throughout this whole

21   trial, unless and until you can conclude, based on your

22   careful and impartial consideration of the evidence,

23   that the Commonwealth has proven Mr. Leuschen guilty

24   beyond a reasonable doubt.

25       It is not Mr. Leuschen's burden to prove that he

1    is not guilty.  In criminal law, it works the other

2    way.  It's the Commonwealth who always has the burden

3    of proving each and every element of this crime.  And

4    shortly, I'm going to tell you what those are.  And

5    they have to prove that Mr. Leuschen is guilty beyond a

6    reasonable doubt and that all of those elements are

7    present.

8         Now, Mr. Leuschen is accused of a crime, he's not

9    required to present any evidence or prove anything in

10   his own defense.  If the Commonwealth has failed to

11   carry their burden, then your verdict must be not

12   guilty.  On the other hand, if you conclude that the

13   Commonwealth's evidence does prove beyond a reasonable

14   doubt that Mr. Leuschen is guilty, then your verdict

15   should be guilty.  Although the Commonwealth is the

16   moving party and it's their job to prove Mr. Leuschen

17   guilty beyond a reasonable doubt, that doesn't mean

18   that they have to prove that case beyond all doubt and

19   it doesn't have to be a mathematical certainty, nor

20   must it demonstrate the complete impossibility of

21   innocence.

22        A reasonable doubt, as the name implies, is a

23   doubt that's based on reason, a doubt for which you can

24   give a reason.  It is such a doubt as would cause one

25   of you, ladies and gentlemen, after your careful and

1    candid and impartial consideration of all of the
2    evidence, to be so undecided that you cannot say that
3    you have a deep-routed belief in Mr. Leuschen's guilt.
4    It is such a doubt as would cause a reasonable, a
5    careful and sensitive person, to hesitate or pause in
6    the more important affairs of life.
7         Now, it's difficult to put your finger on a
8    reasonable doubt, and you're going to have to make that
9    determination yourself based on everything you have
10   heard at this trial.  Now, that reasonable doubt must
11   fairly arise out of the evidence that was presented or
12   out of the lack of some evidence that was not presented
13   with regard to some element of the crime.  A reasonable
14   doubt must be a real doubt.  You must not imagine that
15   there is a doubt, nor should you manufacture or make up
16   a doubt to avoid carrying out an unpleasant duty.  So,
17   to summarize, you may not find Mr. Leuschen guilty
18   based on a mere suspicion of guilt.  The Commonwealth
19   has the burden of proving Mr. Leuschen guilty beyond a
20   reasonable doubt.  If the Commonwealth meets that
21   burden, then Mr. Leuschen is no longer presumed
22   innocent and you should find him guilty.  On the other
23   hand, if the Commonwealth does not meet its burden,
24   then you must find him guilty -- I'm sorry, you must
25   find him not guilty if the Commonwealth has not met

1    their burden.

2         Now, ladies and gentlemen, the charges against Mr.

3    Leuschen start out basically simple.  But there are

4    some exceptions, and that's what gets a little bit

5    complicated.  Now, I'm first going to tell you the

6    basic charge.  The statute states no person shall carry

7    a firearm in any vehicle or concealed on or about his

8    person except in his place of abode or fixed place of

9    business without a license.  Now, that's the charge.

10        Now, Mr. Leuschen is charged three times because

11   there are three revolvers, and he has one charge

12   relating to each of those three revolvers.  Now, the

13   elements in that crime are as follows.  In order to

14   find the defendant guilty of having firearms without a

15   license, these elements must be present:  First, you

16   have to decide that the defendant carried a firearm in

17   a vehicle or concealed about his person.  I'm not going

18   to comment on these as to whether or not those elements

19   have been met, that's your job.  The second element

20   that you have to consider is that the firearm was in

21   operating condition, and that's a required element of

22   this crime.  The third element is that the defendant

23   was not in his place of abode or his fixed place of

24   business.  And the fourth thing you have to consider is

25   whether or not the defendant had a license for carrying

1    the pistol.

2        Now, assuming you decide as to each of the three

3    pistols that those four elements have been met, then I

4    guess it would make sense to see if there are any

5    exceptions that would be pertinent to allow you to find

6    the defendant not guilty.

7        Now, there are two different exceptions; there are

8    a number, but there are only two that are germane to

9    what we are doing, and I'm going to read them from the

10   statute.  Now, the statute that I just read, the crime

11   Mr. Leuschen is charged with, states that if Mr.

12   Leuschen would meet one of these exceptions, then it

13   would be an excuse and he would not be guilty.

14       Now, the first exception states this, and these

15   are people who are allowed to violate the section:  The

16   members of any organization incorporated under the laws

17   of this Commonwealth engaged in target shooting with

18   rifle, pistol or revolver, if such members are at or

19   are going to or from the places of assembly or target

20   practice.  Now, with regard to the weapons, if you

21   would find that Mr. Leuschen would qualify under this

22   exception, then you must acquit him of that charge.

23       Now, there is a second exception, and this one is

24   even more complicated because there are two parts to

25   it.  Let me explain it by reading.  Another exception,

77

1    that's a person who is allowed to violate this section,

2    is as follows:  Persons licensed to hunt, if such

3    persons are actually hunting or are going to the places

4    where they desire to hunt or returning from such

5    places.  Now, that's the exception, but it doesn't stop

6    there, that's qualified, and the qualification is as

7    follows:  To qualify for the hunting exception, as I

8    will refer to it, such person shall, at the time of

9    securing his hunting or fishing or any time after he's

10   acquired those licenses, register with the County

11   Treasurer the make of the firearm he desires to carry

12   and the caliber and number thereof on a form that's

13   provided by the Pennsylvania State Police.

14        Now, to try to paraphrase that, it reads this way:

15   If you decide Mr. Leuschen has met the four elements so

16   that he would be guilty as charged, then you have to

17   see if either of the exceptions apply; you only need

18   one of them.  If the exception you're looking at is the

19   one that deals with the hunting, if he's going hunting,

20   it's an exception, there is a qualification to that.

21   And that qualification states that if you're going to

22   use the hunting exception, you have to, before that

23   exception can be granted, qualify by registering with

24   the County Treasurer.  Now, that's a little bit

25   complicated, but that will be for you jurors to decide.

1        Now, I want to say one more comment.  You have

2   heard testimony and argument as to the involvement of

3   the semiautomatic pistol that's the subject of one of

4   the charges.  Now, I think a correct statement of law

5   is that if you would hunt with that semiautomatic

6   pistol, it would be a violation of the game law.  But

7   what I want to tell you is if you believe that

8   exception, the hunting exception has been met, and that

9   the condition for meeting that exception is to register

10  that weapon in the County Treasurer's office, you can

11  find that Mr. Leuschen is not guilty of the charge

12  involving the 9mm pistol, even though it would be an

13  illegal weapon to hunt with.

14       Now, that's a little more complicated than normal,

15  but I think we can handle it from there.  Now, those

16  are the elements of the crime, and as I indicated to

17  you, there are four charges.  You will decide three of

18  them and I will decide the one that's the game law

19  violation at some time later.

20       Now, before you retire to decide this case, I

21  would like to provide you with some final guidelines

22  for the way in which you conduct your deliberations and

23  how you properly arrive at a verdict.  Now, it's my

24  responsibility to decide all the questions of law, and

25  you must accept and follow my rulings and instructions

1    on those matters I have just told you about that tell

2    you what the law says and how it must be applied.  I am

3    not the judge of the facts.  If one person said yes and

4    another said no, it's up to you to decide which to

5    believe if you cannot reconcile the two sides.  It's

6    not up to me to decide the facts involving the charges

7    against Mr. Leuschen.  You, the jurors, are the sole

8    judges of those facts.  It's your responsibility to

9    consider the evidence, to find the facts and apply the

10   law to the facts as you find them to decide whether or

11   not Mr. Leuschen is guilty beyond a reasonable doubt.

12        Your decision in this case is of considerable

13   importance.  It's your responsibility as jurors to

14   perform your duties and reach a verdict based on only

15   the evidence that was presented in this trial.

16        Now, in deciding the facts that you may choose to

17   believe, what you choose not to believe, I would expect

18   you to use your common sense and your everyday

19   practical knowledge of life as you have experienced it.

20   Your deliberations should be free of any bias or

21   prejudice.  Both the Commonwealth and Mr. Leuschen have

22   a right to expect you to consider the evidence

23   conscientiously and apply the law as I have just

24   outlined it to you.

25        Now, in arriving at a verdict, you should not

consider yourself whatsoever with any future possible
consequences of your verdict, including what the
penalty might be if you choose to find the defendant
guilty.  The question of guilt and the question of
penalty are decided separately.

Now, because this is a criminal matter, we will
have twelve jurors deliberating, and your verdict must
be unanimous.  That means before you can end up with a
verdict, each of you must agree to it.  You have a duty
to consult with each other and to deliberate as you
best see fit to try to reach an agreement if it can be
possibly done.  Now, each of you must make your own
determination, but only after you have considered what
others might want to discuss concerning this matter.
In the course of your deliberations, you should not be
shy and if you have an opinion that's an honest
opinion, you ought to voice it.

Now, when you leave, the first thing you should do
is to select one of your members as what used to be
called a foreman, we now call it the foreperson.  One
of the responsibilities of that foreman or forewoman is
to see that the decision is deliberated in a fair
manner.  That person should make sure that anybody that
wants to express an opinion has proper and ample time
to do that.

1       Now, when you leave to go to the jury room, you

2   will be given certain exhibits.  Now, in this case we

3   have had a number of exhibits presented and I have met

4   with the attorneys and we have decided that you can

5   take most of them.  But because some of those are

6   firearms and ammunition, we don't want any accidents,

7   so we are not going to allow any ammunition out of the

8   room.  You will have the three weapons, the three

9   handguns that have previously been identified, plus

10   most of everything else.  You will not be given any

11   written statements of any of the witnesses.  Please

12   don't ask for them because if I had them, I couldn't

13   give them to you.

14       Now, when you leave, you will have this envelope.

15   In this envelope, there are three pieces of paper that

16   we call a verdict slip.  They are very basic, there is

17   one verdict slip for each of the three charges and it

18   states how you find the defendant, either guilty or not

19   guilty.  Once you have reached a conclusion on each of

20   the three charges, the foreman completes this by saying

21   guilty or not guilty, he dates it July 14, he signs the

22   form, that's how we will ultimately know what the

23   conclusion is.

24       Now, after you have finished deliberating, you

25   should knock on the door and advise the tipstaff, there

1    will be one with you at all times -- not in your

2    deliberating room, but in the vicinity -- to help you

3    if she can.  When you reach a decision, you notify her.

4    Please do not tell her what it is, we only want to

5    know, yes, we have a verdict or no, we don't.  When we

6    know that you have a verdict, we will reassemble right

7    in this room.  It will take a little time to get the

8    attorneys and Mr. Leuschen and the court personnel

9    available.  We will meet in open court.  At that time,

10    I will ask the foreman if he has reached a verdict.  I

11    will check to see that it's in proper form and then

12    that verdict will be announced in the open courtroom.

13        Now, gentlemen, is there anything else?

14        MR. D'ALBA:  No, Your Honor.

15        MR. ZAK:  No, we have nothing further.

16        THE COURT:  Okay.

17        (Whereupon, the Tipstaves were sworn.)

18        THE COURT:  You may take the jury.  Would the

19    alternate juror please stay in his place, please.

20        (Whereupon, the jury began their deliberations at

21    2:38 p.m.)

22        THE COURT:  Mr. Meely, you're the only alternate

23    juror we have left.  And at this time we have -- at

24    this point we have to dismiss you from your

25    responsibilities, and it's unfortunate you cannot

1    participate in the deliberations in that you have been

2    here for three days, but I want to tell you we really

3    appreciate your time and your dedication.  Thank you

4    very much.

5         (Whereupon, the alternate juror was dismissed.)

6         THE COURT:  Mr. Leuschen, you have been charged

7    with four charges.  The jury is deliberating on the

8    first three to make a decision.  The fourth charge is a

9    violation of the Game Act and it's a summary offense

10   and it's my job to determine that.

11        Now, the elements of that crime are -- I will read

12   it to you, it is unlawful for a person to have a

13   firearm of any kind in a conveyance propelled by

14   mechanical power, which would qualify as your truck,

15   and the testimony that I have heard is that you had a

16   loaded rifle in that vehicle.  So it is my

17   determination that you are guilty as of that charge as

18   you have been charged.

19        Now, that is, according to our statute, a summary

20   of the fifth degree and the penalty for that that I

21   impose herewith is a $100 fine and costs, and I will

22   give you 30 days from today to attend to the payment of

23   those.

24        THE DEFENDANT:  Yes, Your Honor, thank you.

25        It was a car, sir, not a truck.

1      THE COURT:  Oh, I'm sorry.  Thank you.

2      MR. ZAK:  I don't know how long the jury will be

3   out, but we are inquiring -- we were just inquiring

4   about the -- in the event of a question, I want to talk

5   about that to the trooper concerned about it because

6   it's his -- we have an evidence locker in the DA's

7   office and I just want -- I just didn't want to leave

8   it unattended.

9      THE COURT:  We are going to tend to it right next.

10     MR. ZAK:  Because I had a gun case the last term,

11  the jury had to come back the next day, they were

12  deadlocked and there was some juggling around with that

13  stuff.

14     THE COURT:  We are going to tend to it as soon as

15  our defendant is on his way back.  As soon as he

16  leaves, I want to talk to the trooper about how to

17  secure that.

18     (Whereupon, there was a pause in the proceedings.)

19     THE COURT:  I'm concerned about the weapons in the

20  courtroom.  Now, first the rifle we don't even need, so

21  that can be --

22     TROOPER MYERS:  I can take that back.

23     THE COURT:  I don't know.  He has an appeal

24  period, so I wouldn't dispose of it until you are

25  beyond that.

85

1          MR. ZAK:  We'll maintain it.

2          THE COURT:  But we can move it out of here now.  I

3     have instructed the tipstaffs to leave the pistols in

4     that room.

5          (Whereupon, a discussion was held off the

6     record.)

7          (Whereupon, the jury returned at 3:45 p.m. with a

8     question.)

9          THE COURT:  Sir, are you the jury foreman?

10         THE FOREMAN:  Yes, Your Honor.

11         THE COURT:  I received a question that was

12    submitted by you from your jury, and I wasn't quite

13    sure of what you were asking, so I ask that you

14    rephrase it.  Now, I want to tell you what I think you

15    have asked me, and I just want you to tell me if I

16    understand your question.  Do you want to know if an

17    element of this crime requires the firearm to be loaded

18    or not loaded, is that your question?

19         THE FOREMAN:  That's one of them.

20         THE COURT:  Okay.  Well, let me respond to that

21    one.  Now, in my charge, I read what the crime is

22    stated in our statute, and I broke it down into four

23    elements.  Now, the elements that you must find present

24    to determine a guilty conclusion is that the defendant

25    carried a firearm.  It doesn't describe whether or not

1    it be loaded.  And also, that the firearm was in

2    operating condition.  So there is nothing in any of the

3    elements that requires the weapon to be loaded or

4    identifies it as unloaded.  So my conclusion to that

5    question is that the crime elements can be met, whether

6    the weapon is loaded or not loaded.  Does that answer

7    that question?

8         THE FOREMAN:  Your Honor, now --

9         THE COURT:  Now, I don't want to discuss it now,

10   but --

11        THE FOREMAN:  There is no discussion with that, we

12   are having trouble with the license.

13        THE COURT:  Well, if you could frame a question

14   pertaining to the license, I must meet with the

15   attorneys to determine how to respond to it.  So, if

16   you would -- if you have a question, you can sit right

17   there and write it for us and we will try to do it here

18   while we are present.  Do you want to do that?  But I

19   really don't want to discuss it.  I'd like to limit it

20   to a question and an answer.  Then, gentlemen, when we

21   get the question, we will look at it here and see how

22   you suggest we answer it.

23        (Whereupon, a brief discussion was held off the

24   record.)

25        THE COURT:  We understand that, we are going to

1    draft an answer for you.

2        THE FOREMAN:  All right.

3        THE COURT:  The second question I have been

4    submitted is you want to know the difference between a

5    provisional license and a permit.  Now, a permit is

6    something that a person applies to that allows -- or

7    applies for that allows that person to carry a weapon.

8    And if we had a permit in this case, there would not be

9    any charge.  A provisional license applies only to the

10   hunting exception that I had told you about in my

11   charge.  And if you have a provisional permit, you're

12   allowed to have a weapon on the way to hunting and on

13   the way home.  The permit is much broader and allows

14   you to have a concealed weapon, period.  Does that

15   answer your question?

16       THE FOREMAN:  Yes, Your Honor, it does.  Are we

17   now ready to continue to deliberate?  I think so.  I

18   thank you.

19       (Whereupon, the jury recessed to continue their

20   deliberations at 3:52 p.m.)

21       (Whereupon, the jury returned with their verdict

22   at 4:07 p.m.)

23       (Whereupon, during the verdict proceedings,

24   Attorney John J. Trucilla appeared on behalf of the

25   Commonwealth.)

1       THE TIPSTAFF:  Ladies and gentlemen of the jury,
2   have you agreed upon a verdict?
3       THE FOREMAN:  We have.
4       THE TIPSTAFF:  As to your verdict in the issue
5   joined between the Commonwealth of Pennsylvania and
6   Douglas Burton Leuschen, you say you find the
7   defendant, Douglas Burton Leuschen, guilty of Count 1,
8   that's the 9mm semiautomatic charge; so say you all?
9       (Whereupon, the jurors respond affirmatively.)
10      THE TIPSTAFF:  Count 2, the .357 revolver charge,
11  you say you find the defendant, Douglas Burton Leuschen
12  not guilty, so say you all?
13      (Whereupon, the jurors respond affirmatively.)
14      THE TIPSTAFF:  Count 3, the .22 caliber revolver,
15  you say you find the defendant, Douglas Burton
16  Leuschen, not guilty, so say you all?
17      (Whereupon, the jurors respond affirmatively.)
18      THE COURT:  Thank you, ladies and gentlemen of the
19  jury.  Now your job is concluded and I appreciate and
20  we all in the court system appreciate very much the
21  time and the devotion and the effort, and at this time
22  I excuse you from your duties.
23      MR. D'ALBA:  Excuse me, Your Honor, before you do
24  that, may we approach the bench briefly?
25      (Whereupon, a discussion was held off the

1      record.)

2           THE COURT:  Ladies and gentlemen, as I indicated

3      to you, your verdict has to be unanimous, so the

4      attorneys are allowed to ask you individually what your

5      verdicts are.  And when your number is called by our

6      tipstaff, I would appreciate it if you would respond

7      and we will do that three different times, one on each

8      of the charges.  Now, that's called polling the jury

9      and I'm first going to poll you on Charge Number 696

10     and that is the charge involving the 9mm semiautomatic

11     rifle, and the jury slip I have shows that you

12     determined that Mr. Leuschen is guilty of that charge.

13     Now, that's the only one we are going to talk about for

14     now.

15          THE TIPSTAFF:  Juror 160, would you please stand

16     and give your verdict and remain standing.

17          JUROR NO. 160:  Guilty.

18          THE TIPSTAFF:  Number 550?

19          JUROR NO. 550:  Guilty.

20          THE TIPSTAFF:  In place of our juror who is ill,

21     Juror 632?

22          JUROR NO. 632:  Guilty.

23          THE TIPSTAFF:  252?

24          JUROR NO. 252:  Guilty.

25          THE TIPSTAFF:  421, this would be Andrew Lucas?

1       JUROR NO. 421:  Guilty

2       THE TIPSTAFF:  233?

3       JUROR NO. 233:  Guilty.

4       THE TIPSTAFF:  230?

5       JUROR NO. 230:  Guilty as charged.

6       THE TIPSTAFF:  736?

7       JUROR NO. 736:  Guilty.

8       THE TIPSTAFF:  739?

9       JUROR NO. 739:  Guilty.

10      THE TIPSTAFF:  267?

11      JUROR NO. 267:  Guilty.

12      THE TIPSTAFF:  280?

13      JUROR NO. 280:  Guilty.

14      THE TIPSTAFF:  And 342?

15      JUROR NO. 342:  Guilty.

16      THE COURT:  Thank you.  Do you want them to sit

17  down and do it again?  Now, the District Attorney's

18  Office wants to have me poll you, jury, regarding the

19  other two charges.  Now, do you have any objection, Mr.

20  Trucilla, for us doing those together?

21      MR. TRUCILLA:  No, not at all, Your Honor.

22      THE COURT:  We are talking two charges and these

23  are the charges involving the .357 revolver and the .22

24  caliber revolver.  And your response would be guilty on

25  both charges, not guilty on both charges or one of

1          each.  And we will do it all at one time.  Would you do

2          that, Carla, please?

3              THE TIPSTAFF:  Juror 160, if you'll please stand

4          and give your verdict?

5              JUROR NO. 160:  Not guilty on both charges.

6              THE TIPSTAFF:  Number 550?

7              JUROR NO. 550:  Not guilty on both charges.

8              THE TIPSTAFF:  Number 632?

9              JUROR NO. 632:  Not guilty on both charges.

10             THE TIPSTAFF:  Number 252?

11             JUROR NO. 252:  Not guilty on both charges.

12             THE TIPSTAFF:  Number 421?

13             JUROR NO. 421:  Not guilty on both charges.

14             THE TIPSTAFF:  Number 233?

15             JUROR NO. 233:  Not guilty on both charges.

16             THE TIPSTAFF:  Number 230?

17             JUROR NO. 230:  Not guilty, both charges.

18             THE TIPSTAFF:  Number 736?

19             JUROR NO. 736:  Not guilty on both charges.

20             THE TIPSTAFF:  Number 739?

21             JUROR NO. 739:  Not guilty, both charges.

22             THE TIPSTAFF:  Number 267?

23             JUROR NO. 267:  Not guilty, both charges.

24             THE TIPSTAFF:  Number 280?

25             JUROR NO. 280:  Not guilty, both charges.

92

1          THE TIPSTAFF:  Number 342?

2          JUROR NO. 342:  Not guilty, both charges.

3          THE TIPSTAFF:  You may be seated.

4          THE COURT:  Anything further from either of the

5    attorneys?

6          MR. TRUCILLA:  Not at this time.

7          MR. D'ALBA:  Not in front of the jury, Your Honor,

8    no.

9          THE COURT:  Then, ladies and gentlemen, I will

10   dismiss you at this time, and again, thank you very

11   much.  You have done a great public service.

12          (Whereupon, the jury was dismissed.)

13          THE COURT:  Mr. Leuschen, you were present in the

14   courtroom when the jury rendered its verdict?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Do you understand that you had three

17   charges and do you further understand that they found

18   you not guilty on two and guilty on one charge?

19          THE DEFENDANT:  Yes, I do, Your Honor.

20          THE COURT:  They found you guilty of the charge

21   involving in 9mm semiautomatic rifle; do you understand

22   that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  Now, Mr. Leuschen, I want to

25   tell you that you have the right to file post-verdict

1    motions in the nature of a Motion for New Trial or a

2    Motion in Arrest of Judgment.  I want to further tell

3    you that only those grounds that you decide to raise in

4    those motions will be considered by this court or by

5    any court of appeal if you choose -- you want to

6    proceed to file an appeal, we will only consider those

7    matters in your appeal.

8           THE DEFENDANT:  Yeah.

9           THE COURT:  Any post-verdict -- that means matters

10   that you want to now take care of must be in writing.

11   These post-verdict motions must be filed within ten

12   days following this verdict of guilty.

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  If you fail to file the motions within

15   that length of time, you will lose your right to appeal

16   before this court or probably to a higher court as

17   well.  Now, you have the right to the assistance of

18   counsel, that's a lawyer, in filing these motions and

19   on any appeal issues that you would like to raise.

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  If you cannot afford to retain a

22   lawyer to represent you, I will appoint counsel for you

23   at no cost to yourself.  If you cannot afford to pay

24   the Court costs that are associated with your appeal,

25   the Court will see to it that those court costs are

1    paid.  Now, do you understand your rights of appeal as

2    I have explained them here to you?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Do you have any question at all

5    concerning these appeal rights that I have just

6    discussed?

7         THE DEFENDANT:  Your Honor, I would like to

8    question the ability to have reference to a law library

9    and use of a typewriter and legal materials, so that I

10   might be able to research this myself with perhaps

11   counsel's advice.

12        THE COURT:  Okay.  And the counsel that you want

13   to start with is Attorney D'Alba?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Attorney D'Alba, we will talk about

16   those matters.  I don't want to decide that right now,

17   Mr. Leuschen, but I'll discuss that with your counsel

18   and we can see what to provide.

19        THE DEFENDANT:  Thank you.

20        THE COURT:  Mr. Leuschen, I'm not encouraging you

21   to file an appeal, but I'm not discouraging you either.

22   The decision is solely up to you, but I want you to

23   know there are very serious time constraints and you

24   must do it properly within a right period of time or

25   you're going to be stuck.  Do you understand all of